# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| RADAMES MOLINA ALBELO, o/b/o himself and all other persons similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) Case No.: 4:17-cv-0454-DGK |
| v. | )<br>) |
| EPIC LANDSCAPE PRODUCTIONS, L.C., | )<br>) |
| Defendant. | ) |

## ORDER DENYING MOTION FOR DECERTIFICATION

This is a collective action lawsuit seeking to recover unpaid wages and overtime pursuant to the Fair Labor Standards Act ("FLSA"). The Court[1] previously conditionally certified a collective class of current and former landscape laborers who worked for Defendant Epic Landscape Productions. L.C. ("Epic").

Now before the Court is Epic's Motion for Decertification of this class. ECF No. 211. For the following reasons, the motion is DENIED.

## Background

On May 23, 2018, the Court conditionally certified an FLSA class consisting of "all current and former landscape laborers who worked for Defendant at any time from June 5, 2014, to the present who were not fully compensated at the applicable wage rates for all work performed." Order at 5, ECF No. 41. Following the close of discovery, Epic moves for decertification.

---

[1] This case was previously assigned to the Honorable Ortrie D. Smith, Senior Judge, United States District Court for the Western District of Missouri. It was transferred to the undersigned on January 22, 2020.

## Standard

Under the FLSA, a collective action may be brought by an employee for himself and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). "Plaintiffs may be similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014) (internal quotations omitted).

The Eighth Circuit has not articulated a standard for determining whether potential opt-in plaintiffs are "similarly situated" for purposes of certification in FLSA cases. However, a majority of the district courts in the Eighth Circuit use a two-step analysis. *See, e.g.*, *Turner v. Concentrix Servs., Inc.*, No. 1:18-cv-1072, 2020 WL 544705 (W.D. Ark. Feb. 3, 2020). At the first step, a plaintiff moves for class certification for the purpose of providing notice to potential class members who may wish to opt-in to the litigation. *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007). Step two is generally when a defendant moves to decertify the class, and "is typically done after the close of discovery when the Court has much more information and is able to make a more informed decision." *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 363 (W.D. Mo. 2007) (citation omitted).

Here, at step one, the Court conditionally certified a class of current and former landscape laborers. This case has now reached the second stage.

"On a motion to decertify, the courts must determine whether plaintiffs are similarly situated with respect to their job requirements and pay provisions." *Fast v. Applebee's Int'l Inc.*, No. 06-4146-CV-C-NKL, 2009 WL 2391921, at *1 (W.D. Mo. Aug. 3, 2009). In making this determination, a court considers: "(1) disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appear to be individual to

each plaintiff; and (3) fairness and procedural considerations." *Bouaphakeo*, 765 F.3d at 796. Minor differences do not warrant decertification. *Id.* The essential question is "whether the differences among the plaintiffs outweigh the similarities of the practices to which they were allegedly subjected." *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 933 (E.D. Ark. 2012).

## Discussion

With respect to the first criterion, Epic argues the class should be decertified because the landscape laborers worked at different locations, performed different tasks, and conducted "varying safety-affecting functions related to commercial motor vehicles." Suggestions in Supp. 16, ECF No. 212. This argument is without merit. The Court finds that while there are variations in the employees' work, supervisors, and work locations these differences are immaterial. "[I]f one zooms in close enough on anything, differences will abound." *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-CV-1018 (PJS/RLE), 2007 WL 2780504, at *4 (D. Minn. Sept. 24, 2007) (denying decertification based on exaggerated and immaterial differences between class members). The question is whether the differences are material. Whether a given landscape laborer was employed in Gardner or Olathe, worked in the Landscape Production Division or the Lawn Maintenance Division, or spent the bulk of his time planting shrubs or mowing grass is irrelevant. These differences do not outweigh the common questions of law and fact here, such as whether Epic paid landscape workers overtime, and whether Epic properly classified them as exempt under the Motor Carrier Act ("MCA") exception.[2]

With respect to the second criterion, Epic states it will present two individualized defenses.

---

[2] The MCA expressly excludes from the FLSA "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to [49 U.S.C. § 52502]."]" 29 U.S.C. § 213(b)(1). "Commonly known as the Motor Carrier Act ('MCA') exemption, this exemption is designed to avoid potentially overlapping jurisdictions between the Transportation Secretary, who now administers the MCA, and the Secretary of Labor ("Labor Secretary"), who administers the FLSA." *LaCurtis v. Express Med. Transporters, Inc.*, 856 F.3d 571, 574–75 (8th Cir. 2017) (quotations omitted).

Its primary defense is that the opt-in Plaintiffs were properly categorized as exempt under the MCA exemption. Epic argues that when any employee engages in work affecting the safety of a truck covered by the MCA—such as helping a truck driver determine if the trailer's lights are functioning—the MCA exemption applies to that employee. The second defense is that some opt-in Plaintiffs did not work more than forty hours in a given week, and thus are not eligible for overtime payments under the FLSA for that week. Epic contends both defenses require individualized assessment, which warrants decertification.

Neither defense, either alone or in tandem, merits decertification. First, on the issue of exempt workers under the MCA, whether, or how often, a particular landscape laborer did something like check the straps holding down a mower in a trailer (which appears to be how Epic is attempting to shoe-horn landscape laborers into the MCA exemption), is not enough to decertify the class. Plaintiffs have put ample evidence in the record that Epic applied the MCA exemption on a class-wide basis to landscape laborers. Epic cannot escape this conclusion by including in the analysis the duties of truck drivers who operate trucks weighing in excess of 10,000 pounds—who are plainly not part of the class[3]—in an attempt to muddy the analysis and decertify the class.

Epic's second argument that because some opt-in Plaintiffs did not work more than forty hours in some workweeks, they cannot be part of the class, is also unavailing. While there is unquestionably variation in the amount of work in excess of forty hours performed in a given week among class members, and some class members had weeks in which they did not work in excess of forty hours at all, such differences are inconsequential for certification purposes and may be adequately addressed through damages. *See Harris v. Chipotle Mexican Grill, Inc.*, No.

---

[3] The parties agree that this class does not include drivers or foremen.

13-CV-1719 (SRN/SER), 2017 WL 2537228, at *8 (D. Minn. June 12, 2017) (holding differences in the amount of FLSA-compensable work performed by restaurant employees, with some reporting no such work performed, did not preclude certification).

Finally, the Court finds the third criterion, fairness and procedural considerations, weighs in favor of certification. There are approximately one hundred workers in the collective class. The similarities in the class members' claims far outweigh the minor differences in the workers' individual work situations, thus representative testimony will yield a just result. Trying these cases individually would not improve the quality of justice, but would waste judicial resources—the Court would literally have to hold approximately 100 jury trials, involving approximately 5,000 prospective jurors. Additionally, decertification in the face of the class members' marginal differences would be inconsistent with the policy underlying the FLSA. *See Fast*, 2009 WL 2391921, at *2 (noting the FLSA is a remedial statute which should be read in favor of coverage, and that the defendant's interest in litigating claims individually must be balanced against the plaintiffs' rights, many of whom could not bear the cost of an individual trial). The Court concludes no fairness or procedural considerations raised by Epic warrant decertification.

Accordingly, Epic's Motion for Decertification is DENIED.

**IT IS SO ORDERED.**

Date: June 1, 2021                              /s/ Greg Kays
                                                GREG KAYS, JUDGE
                                                UNITED STATES DISTRICT COURT