# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

**RADAMES MOLINA ALBELO, on behalf of himself and all other persons similarly situated,**

    **Plaintiff,**

**v.**

**EPIC LANDSCAPE PRODUCTIONS, L.C.,**

    **Defendant.**

**Case No. 17-cv-454-DGK**

---

## PLAINTIFFS' UNOPPOSED MOTION FOR
## PRELIMINARY SETTLEMENT APPROVAL

The parties have reached an agreement to settle this case. The settlement is fair, reasonable and beneficial to the class members and should be readily approved. The settlement creates a common fund of $1,750,000.00 covering approximately 1,850 class members who worked for Defendants as laborers, foremen and drivers. The settlement addresses the overtime time that laborers, foremen and drivers worked without overtime premium pay. The settlement results in a projected average recovery of nearly $1,000 per class member with individuals who worked the entire class period to receive more than five times that average.

Each class member will be sent notice that identifies his or her specific net recovery (free and clear of fees and costs) so that all putative class members will be given the choice to participate or not to participate, including the right to preserve any individual claims or rights they may have against Defendant.

This settlement is eminently fair, adequate and reasonable and it should be readily

approved.

## I.    Procedural History and Settlement Overview

The named plaintiff, Radames Molina Albelo, brought this lawsuit on June 5, 2017. Plaintiff sought relief on behalf of a nationwide class for unpaid wages pursuant to the Fair Labor Standards Act ("FLSA"), the Kansas Wage Payment Act, and state law claims for breach of contract, quantum meruit/unjust enrichment. Shortly after the case was filed, the parties engaged in unsuccessful ADR negotiations pursuant to the Mediation Assessment Program with this Court, with Jill Morris. After some threshold discovery, including the exchange of documents and interrogatories, and after full briefing, the Court certified the FLSA collective class. Notice was sent to the FLSA collective and numerous class members opted into the case. The parties continued discovery and had several discovery disputes which were presented to the Court.

In the interim, the United States Department of Labor launched an investigation with similar allegations on behalf of the same class members. This resulted in an assessment of back wages of roughly $800,000, which is currently on appeal.

After conducting extensive additional discovery, including the review and analysis of tens of thousands of pages of Epic documents and correspondence, and after the depositions of additional class members and Epic witnesses, Plaintiffs moved for certification (Doc. 208) on breach of contract claims and quantum meruit/unjust enrichment and that motion is currently pending.

During this process the parties presented numerous discovery disputes to the court and set a trial date for July 2021. In response, Epic filed motions for partial summary judgment, for decertification of the FLSA collective, and sought various other relief.

Through the course of discovery, the parties exchanged several rounds of written

2

discovery, numerous documents, ESI, payroll data and conducted a significant number of depositions of Defendant's witnesses and class members.

While these motions were pending, the parties agreed to mediate the case before the Honorable Jay Daugherty, a regionally recognized expert mediator who has successfully resolved numerous class and collective actions. The parties attended mediation on June 22, 2021, and after over 17 hours of continuous negotiations, agreed to resolve the case.

The Plaintiffs and class counsel believe the claims asserted have merit and that the evidence developed to date supports the claims asserted. Plaintiffs and counsel, however, also recognize the risk of further proceedings in a complex case like this, and believe that the settlement confers substantial benefits upon the class members. Defendants deny Plaintiffs' claims in their entirety and deny any wrongdoing, but wish to avoid the uncertainty and risk attendant with further litigation.

The main terms of the agreement are as follows:

- The settlement creates a common fund of $1,750,000 to resolve the claims of approximately 1,850 class members;

- Payments will be based on each class member's actual pay within the applicable statute of limitation;

- Separate notices will be provided to plaintiffs who opted in in the initial notice period, informing them the amount of their settlement free and clear of attorneys' fees, costs and administrative costs and their right to opt out or object to the settlement if they so choose. Existing FLSA class members will receive their allocated amount unless they choose to exclude themselves from the settlement;

- Individuals who have not yet opted into the case will receive notice informing them the amount of their settlement free and clear of attorneys' fees, costs and administrative costs and their right to participate in the settlement, opt out, or object to the settlement if they so choose;

- The notice will be mailed, and emailed. There will be a reminder notice sent to individuals who have not opted in within thirty days of the original notice. The notice is formatted based on the Federal Judicial Center notice and other notices

3

approved by this Court. Claims may be submitted via mail or submitted online with the Settlement Administrator;

- A final fairness hearing allowing class members to submit objections will be held on a date scheduled by the court (approximately 4.5 months after preliminary approval);

- Participating class members, other than those who have opted into the case will not release FLSA claims arising out of the facts of this case. Non-participating class members will not release their FLSA claims but will release their state law claims arising out of the facts of this case;

- Attorneys' fees will comprise one-third of the fund;

- Costs of up to $25,0000.00;[1]

- The Named Plaintiff, class representative Radames Molina Albelo, and other individuals who provided various levels of service and representation during the litigation will receive service awards reflecting their contributions to the litigation and the risks they undertook, totaling approximately 1% of the Gross Settlement Fund.

The settlement agreement is attached as Exhibit 1.

## II.     Question Presented.

Should the Court grant Plaintiffs' motion to approve the settlement of this case when the settlement is fair, reasonable and provides an immediate, significant benefit to the class members, and ends contested litigation that has been pending for four years prior to trial?

## III.     Argument

### A.     Approval of the Rule 23 Class Settlement.

Rule 23(e) sets out a two-part process for Rule 23 settlements.[2] This case is at the first stage of the settlement process, often called "preliminary approval" where the Court decides whether it

---

[1] Current Costs are $14,794.87, but the parties have not yet received an invoice from Judge Jay Daugherty.

[2] Approval of a Rule 23 class settlement involves a two-step process. Manual for Complex Litigation, § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.25, at 38-39 (4th ed. 2002); *see also Schoenbaum v. E.I. Dupont De Nemours & Co.*, 4:05-

4

is likely to approve the settlement such that notice of the settlement should be sent to the class. The newly-amended Rule 23(e)(1) states that in order to send notice of settlement to the class, the Court must first find that the Court will likely:

(1) "approve the proposal under Rule 23(e)(2)"; and

(2) "certify the class for purposes of judgment . . .."

At this first step of the process, the parties request that the Court grant "preliminary approval" of the Rule 23 settlement and order that notice should be sent to the class.

### 1. The Proposed Settlement Enjoys an Initial Presumption of Fairness.

"The law strongly favors settlements. Courts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) (noting that it is especially true in "a protracted, highly divisive, even bitter litigation"); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

---

CV-01108, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009) ("As a practical matter, evaluation of a settlement usually proceeds in two stages; before scheduling the fairness hearing, the court makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing.") (*citing* Manual § 21.632 and *Liles v. Del Campo*, 350 F.3d 742, 745 (8th Cir. 2003)). During the first step, counsel submits the proposed terms of settlement and the Court makes a preliminary fairness evaluation. If the Court is likely to approve the settlement, then it should grant preliminary approval and direct that notice under Rule 23(e) be given to class members of a formal fairness hearing, at which objections may be heard (the second step). *See* Manual § 21.633; Rule 23(E)(1).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions§ 11.41; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). After the parties' arm's length negotiations, "it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel." *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 173-74 (S.D.N.Y. 2000) (quoting *In re Warner Comm. Sec. Lit.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985)); *Sanderson v. Unilever Supply Chain, Inc.*, 10-CV-00775-FJG, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011) (crediting the judgment of class counsel experienced in FLSA cases that settlement was fair, reasonable, and adequate); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("it is the considered judgment of experienced counsel that this settlement is a fair, reasonable, and adequate settlement of the litigation, which should be given great weight.").

## 2. The Rule 23(e) Factors Favors Approval of the Settlement.

In evaluating the fairness of the settlement, the Rule 23(e)(2) factors are:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)       the costs, risks, and delay of trial and appeal;

    (ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

6

According to the Advisory Committee notes: "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." 2018 Advisory Committee Notes.[3] As a result, this motion will follow the factors outlined in Rule 23(e) but will then address several miscellaneous factors previously analyzed by this and other courts. Under any standard, however, the settlement is **fair, reasonable, and adequate**.

### a.        The Department of Labor Supports this Settlement.

Throughout the settlement process, Class Counsel has been coordinating with the Department of Labor, who has been pursuing an independent audit on the identical issues raised in this litigation. Class Counsel has provided the core terms of the settlement to the Department of Labor to determine its position with respect to the settlement.

The Department of Labor has represented that it fully supports this proposed settlement because it recovers more wages for more workers than any fines it has levied.[4] Class Counsel has confirmed the Department of Labor's position on several occasions, including the date of filing this request. The Department of Labor's approval of this settlement further supports a finding that the settlement is fair, reasonable, and in the best interests of the workers at issue in this litigation.

### b.        The class representatives and class counsel have adequately represented the class.

---

[3] In considering the fairness of both Rule 23 and FLSA class settlements, courts have considered the following factors: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object [final approval stage]; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Sanderson*, 2011 WL 5822413, at *3.

[4] Class Counsel would be happy to provide the Court with the contact information of the DOL contact in charge of the DOL investigation.

The class representatives and class counsel have adequately represented the class since the case was filed in 2017. First, class counsel are highly experienced in the area of wage and hour and class action litigation. They have also presented seminars on wage and hour litigation at the local, regional and national levels, and have repeatedly received recognition in the community based on peer review of their practices. Here, they have diligently prosecuted this case for over four years, handling, among other things, motions to dismiss, conditional and class certification motions, discovery disputes, depositions, expert witnesses, dispositive motions and trial preparation. Class counsel also reviewed numerous documents and types of ESI as well as communicated with hundreds of class members regarding the strengths and weaknesses of the case.

Similarly, the class representative has done everything asked of him and more. For example, when the case was filed, Mr. Albelo was a Puerto Rican resident. Through the course of the litigation, Mr. Albelo has made numerous trips back to Kansas City to appear for depositions, mediation, and other matters. Others sat for depositions, and provided written discovery to Epic.

      **c.**            **The proposal was negotiated at arm's length;**

The settlement was fairly and honestly negotiated. "The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist*., Civil No. 05-cdv-01567- WYD-BNB, 2008 U.S. Dist. LEXIS 13069, at *15 (D. Colo. Feb. 11, 2008) (unpublished) (quoting *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983)). The settlement was honestly and fairly negotiated by competent counsel and involved the assistance of two well-respected mediators. "When a settlement is reached by experienced

counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

As the Court is well aware, the case was highly contested. More than four years of litigation, motions, discovery disputes and repeated hearings ratifies this. Defendant disagreed with Plaintiffs' legal and factual positions at every step. Both the substantive merits were contested, as well as collective and class certification at all stages. Moreover, the first two mediations with Jill Morris[5] failed near the beginning of the case and it took four more years of litigation and another in-person mediation with the Honorable Jay Daugherty that lasted over 17 hours. Under these circumstances it cannot be questioned that that deal was reached at arm's length.

> **d.      The relief provided for the class is adequate taking into account:(i) the costs, risks, and delay of trial and appeal;(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;(iii) the terms of any proposed award of attorney's fees, including timing of payment.**

This settlement provides significant relief to class members that compensates them fairly for their alleged unpaid time and is well-within the range of settlements of similar cases.

> **(i)      The costs, risks, and delay of trial and appeal.**

The parties naturally dispute the strength of the Plaintiffs' case, and the settlement reflects the parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes. Plaintiffs' best-case scenario is class certification, a denial of FLSA decertification, an adverse inference instruction on damages and recovery on the merits. Plaintiffs' worst-case scenario is that the Court refuses to certify the Rule 23 Class,

---

[5] The parties conducted two separate mediations with Jill Morris at the beginning of this matter.

9

summary judgment is denied as to Plaintiffs, summary judgment is granted to Defendants, and/or Plaintiffs lose at trial. Even if this case were to proceed to trial and Plaintiffs prevailed on the question of liability, substantial questions would remain as to the measure of damages and the entitlement of each class member to recover. Although Plaintiffs believe strongly in the merits of their claims, the great number of uncertainties in ultimately calculating class damages makes it difficult to predict how the Court/jury would make an assessment and award.

This case is complex and carries significant risks for the parties as to both legal and factual issues, and litigating the case to trial would likely consume great time and expense. The remaining discovery, summary judgment and decertification briefing, possible appeal of any Rule 23 certification order, trial and appeal would consume significant more time and resources from counsel, the parties and this Court. Plaintiffs would likely have brought at least a numerous witnesses from several states for several days of preparation and testimony, at great expense to the parties and inconvenience to the witnesses. Moreover, the defendant would bring an expensive expert witness to trial. And regardless of the outcome, a lengthy appeal would be likely.

On the other hand, the settlement proposed ensures that class members will recover proportionally, based on a formula that takes into account the amount of pay they received in a covered job for Defendants, their rates of pay, and the available claims period for the relevant statute of limitations for each member. This equitable and certain recovery is highly favorable in light of the many uncertainties still pending in the litigation, and weighs in favor of approving the proposed settlement. In sum, the settlement brings substantial and certain monetary value to class members now, rather than uncertain value to an uncertain number of people at an uncertain time after protracted litigation involving complex and changing law.

10

The settlement calls for two notices to be sent to the class. One notice to individuals who have already opted into the litigation (attached as Exhibit A to the Settlement Agreement) and one to class members who have not yet opted into the litigation (attached as Exhibit B to the Settlement Agreement). The notices are essentially the same except that the notice for existing opt in plaintiffs does not provide the opportunity to opt into the settlement because they have already joined the lawsuit, and are thus automatically included. The notice to class members who have not yet opted in includes the right to opt in and participate in the settlement.[6] Both notices provide the right to not participate, opt out or object. Both notices are based on sample notices from the Federal Judicial Center which have been approved by this Court for use in settlement. *See,* https://www.fjc.gov/content/employment-discrimination-class-action-certification-full-notice. The notice includes all of the information required by Rule 23. Indeed, the notice goes above and beyond those requirements and specifically informs class members of their individual settlement amount free and clear of fees and costs.

Further, the parties have agreed that in addition to the mailing of notice, the notice will be emailed to class members for whom an email exists. Additionally, a reminder postcard will be sent to class members. The claims process is easy to use as well. Individuals wishing to participate may

---

[6] The class has already had one opportunity to join the case after the Court ordered nationwide FLSA certification. Instead of merely leaving the individuals who choose not to join the FLSA case out in the cold, the settlement provides those individuals the opportunity to see the amount they can receive and again choose to join the case. This second opportunity to participate is *relatively uncommon* in class and collective actions, and is a favorable term which has been negotiated by the parties.

return a self-addressed envelope or they may visit the claims administrator's website to submit a claim. The notice is easy to read and provides all the necessary information and a claim is easy to submit.

### iii) The terms of any proposed award of attorney's fees, including timing of payment.

The settlement calls for a payment of attorneys' fees constituting one-third of the gross settlement amount plus costs not to exceed $25,000. The attorneys' fee award is scheduled to be funded ten days after the final approval of settlement – the same time period for the funding of the class member payments to the settlement administrator.

The Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the parties have done so. When a settlement yields a common fund for class members, fees must be paid from the recovery. *Boeing Co. v. VanGemert*, 444 U.S. 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well-established.'" *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.,* 364 F.Supp.2d 980, 991 (D. Minn. 2005). Indeed*,* courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common fund cases. *See, e.g., Johnston v. Comerica Mortg. Corp,* 83 F.3d 241, 245-7 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. AMOCO Oil Co.,* 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy,* 364 F. Supp. 2d at 993.

As courts including the Eighth Circuit have routinely recognized, using a percent of the

12

fund approach most closely aligns the interests of the lawyers with the class, since the more that is recovered for the class, the more the attorneys stand to be paid. *See Johnston v. Comerica Mortgage Co.*, 83 F. 3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund situations); *see also Stoneridge Inv. Partners LLC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 2005 U.S. Dist. LEXIS 14772, 40-42 (D. Mo. 2005). Moreover, other Circuits express "a preference for the percentage of the fund method" in class actions. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3rd Cir. 1998) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund"); *Swedish Hospital Corp v. Shalala,* 1 F.3d 1261, 1269, 1272 (D.C. Cir. 1993) ("concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases" and that "a percentage of the fund approach more accurately reflects the economics of litigation practice … and most closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases.").

Indeed, courts routinely "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007); *In re Synthroid Marketing Litigation*, 264 F.3d 712, 717-18 (7th Cir. 2001) (*Synthroid I*) (reversing district court's award for failure to apply "market-based approach" to approving attorney's fees). "The object in awarding a reasonable attorney's fee is to give the lawyer what he would have gotten in the way of a fee in arm's length negotiation, had one been feasible. In other words the object is to simulate the market where a direct market determination is infeasible." *Id.* (*citing Continental Illinois I*, 962 F.2d at 572). *Synthroid* sets forth a framework for assessing attorneys' fees in common fund cases, observing

13

that the court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Synthroid I*, 264 F.3d at 718. To conduct this evaluation, the court must look to "actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Williams v. Rohm and Hass Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) (*citing Taubenfeld*, 415 F.3d at 599). When "the prevailing method of compensating lawyers for similar services is the contingent-fee, then the contingent fee is the 'market' rate." *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986); *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("[I]t is commonplace to award the lawyers for the class a percentage of the fund in recognition of the fact that most suits for damages in this country are handled in the plaintiff's side on a contingent fee basis."). Where plaintiffs engaged in litigation have agreed to a contingent fee of one-third of the net recovery, these agreements "define the market." *City of Greenville v. Syngenta Crop Protection, Inc*., 904 F. Supp. 2d 902, 908 (S.D. Ill. 2012). Here, the market rate is not an item of mere conjecture – Class Counsel entered into a contingency agreement with the Named Plaintiff and class representatives for, at a minimum, one-third of the recovery plus costs.

Courts in the Eighth Circuit and in Missouri "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (*quoting In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *Johnson, et. al. v. Corecivic, et. al.* Case No. 4:16-cv-947 ECF Doc. 275 (W.D. Mo., Dec. 23, 2020) (approving 35% of the settlement fund); *In re Xcel,* 364 F.Supp.2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25%

14

and 36%); *Husein v. Bravo Brio Restaurant Group*, No. 16-cv-00435-DW, Doc. 48 (W.D. Mo. December 13, 2017) (approving one-third of the maximum settlement fund as attorneys' fee in an FLSA class action) (Whipple, J.); *Hernandez v. Texas Capital Bank*, No. 07-0726-ODS, Doc. 107 (W.D. Mo. July 14, 2009) (same) (Smith, J.); *Busler v. Enersys Energy Products Inc.*, No. 09-0159, Docs. 111, 120 (W.D. Mo.) (same) (Gaitain, J.); *Osby v. Citigroup, Inc.*, No. 5:07-06085-NKL, Doc. 128 (W.D. Mo. June 22, 2009) (same) (Laughrey, J.); *Brown v. Time Warner Cable, Inc.*, No. 13-0353-CV-W-BP (W.D. Mo. March 3, 2014) (same) (Phillips, J.); *In re U.S. Bancorp Litigation*, 291 F.3d at 1038 (affirming award of 36% of common fund plus expenses); *Hamilton, et al. v. ATX Services Inc.*, No. 08-0030-SOW (W.D. Mo. May 6, 2008) (order under seal approving attorneys' fees and expenses at 34%); *Burks v. Bi-State Development Agency*, No. 4:09CV1302 (MLM) (E.D. Mo. Jan. 31, 2011) (Doc. 91, p. 3, ¶ 8 & Doc. 102, p. 4, ¶ 9) (approving 33-1/3% attorney's fee award in call center wage and hour claim); *Wolfert v. UnitedHealth Group, Inc.*, No. 4:08CV1643 (TIA) (E.D. Mo. Oct. Aug. 21, 2009) (Doc. 37, p. 2 & Doc. 38, p. 4, ¶ 9) (approving attorney fee award of 33% of the maximum gross settlement amount in call center overtime claim); *Morak, et al. v. CitiMortgage, Inc.*, No. 07-1535 (E.D. Mo. Sep. 26, 2008) (order under seal approving attorneys' fees and expenses at 33%); *Staton v. Cavo Communications, Inc.*, No. 08-0273 (E.D. Mo. Jan. 14, 2009) (order under seal approving attorneys' fees and expenses at 33%); *Edney, et. al. v. The Golf Stop*, No. 11-00185-CV-W-DW (W.D. Mo, Nov. 11, 2011) (Whipple, J.) (approving a fee award of 33% of the settlement fund); *Michaels v. Diodes Fabtech*, No. 4:12-cv-01082-GAF (W.D. Mo., January 14, 2013) (Fenner, J.) (same); *See also Robinson v. Flowers Foods, Inc.,* No. 16-02669-JWL (D. Kan. May 31, 2018) (awarding one-third of common fund in FLSA settlement for pre-and post-shift changing time) (Lungstrum, J.); *Wass v. NPC International, Inc.,* No. 02254-JWL, Doc. 359 (D. Kan. June 27, 2012) (Lungstrum, J.) (approving

one-third of the common fund in FLSA case); *Perry v. National City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%) of the Settlement Fund in FLSA case).

Class Counsel took this case on a contingency basis, with the real possibility of an unsuccessful outcome and no fee of any kind. When Plaintiff filed his Complaint in 2017, it was with no indication that a settlement would be reached or that litigation would be successful. Class Counsel has continued to litigate the case and have personally advanced all litigation expenses for four years.[7]

Class Counsel is also seeking approval of up to $25,000 for litigation expenses. The parties have yet to receive an invoice from Judge Jay Daugherty, but expect the total expenses to be less than this amount. In that event, Class Counsel will only receive their actual expenses. These expenses were all necessary in the pursuit of this litigation and the results obtained. (*See* Itemization of Expenses, filed herewith.) These expenses include filing costs, the costs of taking more than a dozen depositions, travel costs, and the cost of mediation with Judge Jay Daugherty. These costs were reasonable and necessary. It is appropriate and customary in class litigation for class counsel to be reimbursed for out-of-pocket litigation expenses from a common settlement fund. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) ("It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advance to a class."); *see also* 2 Joseph M. McLaughlin, MCLAUGHLIN ON CLASS ACTIONS, § 6:24 (8th ed. 2011) (noting that "class counsel also is entitled to reimbursement from the class recovery (without interest) for the costs and reasonable out-of-pocket expenses

---

[7] Counsel is happy to submit their time records, should the Court so require.

incurred in prosecuting the litigation"). Reimbursable expenses include costs incurred for legal research, photocopying, document production, deposition transcripts, travel, meals, lodging, postage, and expert witness services. *Hale v. Wal-Mart Stores, Inc.*, Nos. 01CV218710, 02CV227674, 2009 WL 2206963, ¶ 6 (Mo. Cir. Ct. Jackson Cty. May 15, 2009) (Midkiff, J.). Exhibit 2 reflects that the costs for which Class Counsel seeks compensation fall within these acceptable categories.

This settlement provides all Class Members with a significant payment, even after accounting for the requested attorneys' fees, reimbursement of out-of-pocket expenses, and the cost of the settlement administrator. All Class Members choosing to participate will be informed in the Notice that Class Counsel will receive one-third of the common fund. If Class Members do not approve of that amount, they can exclude themselves from the settlement and attempt to hire another lawyer to prosecute his or her case at a lower rate.

###### iv. Any agreement required to be identified under Rule 23(e)(3).

No such agreement exists.

#### D. The proposal treats class members equitably relative to each other.

The settlement treats class members fairly and equitably. No person or group of people are treated more advantageously than another. Indeed, the settlement formula takes into account each class member's pay rate and time worked within the applicable statute of limitations. Thus, the longer a class member worked in a class period then the more he or she will receive. But no class members will receive special treatment.

##### e. The Experience and Views of Counsel

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of

17

fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed.1997)). Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson*, 2011 WL 5822413, at *3–4 (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate). Here, the class had the benefit of attorneys who are highly experienced in complex wage and hour litigation and familiar with the facts and law in the case, and who have negotiated many such class and collective action settlements. In Counsel's view, the settlement provides substantial benefits to the class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. Further, in Counsels' experience, when compared with similar litigation, the relief to the class is substantial.

### 3. Class Certification is Appropriate.

The second part of Rule 23(e)(1) requires the Court to determine that it is likely to certify the class for settlement purposes. The Advisory Committee comment states:

> One key element is class certification. If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted. But if a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class. Although the standards for certification differ for settlement and litigation purposes, the court cannot make the decision regarding the prospects for certification without a suitable basis in the record. The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement.

Here, the Court certified the case as a nationwide FLSA class but has not yet addressed certification of the state law claims. For the same reasons the Court granted certification of the FLSA class, the Court should readily certify, for settlement purposes only, the Rule 23 classes.

Rule 23 requires that an action satisfy the four prerequisites of Rule 23(a) and at least one of the provisions of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Under Rule 23(a), the proposed class must satisfy the requirements of numerosity, commonality, typicality, and fair and adequate representation. *See Amchem Prods., Inc.v. Windsor*, 521 U.S. 591, 613-14 (1997). And where, as here, plaintiffs seek certification under Rule 23(b)(3), they must demonstrate that common questions of law or fact predominate over individual issues and that maintaining the suit as a class action is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16.

The claims under state law are based on the same allegations as the FLSA certification – that class members performed overtime without proper compensation. Because the facts and issues underlying the Court's previous certification are the same as underlying the state court certification, the Court should readily certify the Rule 23 classes for settlement purposes.

a. **Plaintiffs' Claims Satisfy Rule 23(a).**

i. **The Class Satisfies Numerosity.**

Here, the proposed Class is sufficiently numerous. It includes approximately 1,850 class members and this easily meets the standard.

ii. **Common Issues of Law or Fact Will Govern the Litigation.**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A plaintiff must show that the claims "'depend upon a common contention' that 'is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is

central to the validity of each one of the claims in one stroke.'" *Cromeans*, 303 F.R.D. at 552 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

The settlement class satisfies Rule 23(a)(2)'s commonality requirement. While only one common question of law or fact is required, this case has many, including:

- Whether a contract exists between Epic and H-2B visa workers requiring payment of overtime compensation;
- Whether Epic paid overtime compensation to its H-2B workers;
- Whether American workers received the same basic compensation as their foreign counterparts, including overtime compensation;
- The amount of overtime that the class worked; and
- The extent of damages.

Each of the foregoing questions is common to the Class because they apply to all class members.

### iii. Plaintiffs' Claims are Typical of the Claims of the Other Members of the Class.

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. "The burden of demonstrating typicality is fairly easily met, so long as other class members have claims similar to the named plaintiff." *Cope*, 319 F.R.D. at 555 (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). "The claims of the entire class need not be identical, but the class representatives must generally possess the same interest and suffer the same injury as the unnamed class members." *Id.* (citations omitted). In assessing typicality, courts consider whether the named plaintiffs' claim "arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). Finally, "[t]ypicality will not be destroyed unless a class representative is subject to a unique defense that threatens to play a major role in the litigation." *Cromeans*, 303 F.R.D. at 552.

The typicality requirement is satisfied here because the named Plaintiffs assert the same claims individually that they assert on behalf of the Class. Plaintiffs intend to prove that Epic was

20

required to pay overtime premiums. This applies equally across the board. Moreover, the class representatives are not subject to a unique defense that could destroy typicality. Thus, Plaintiffs' claims are indistinguishable from those of the Class and typicality is satisfied.

### iv. For Four Years, Plaintiffs and Their Counsel Have, and Will Continue to Adequately Represent the Class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625 (citation omitted). The focus is on whether (1) the class representatives have common interests with class members, and (2) the class representatives will vigorously prosecute the interests of the other class members through qualified counsel. *Paxton*, 688 F.2d at 562-63.

Here, Plaintiffs have no interest that is antagonistic to, or conflicting with, the interests of the Class. To the contrary, Plaintiffs' interests are coextensive of those of the proposed Class members in establishing liability and damages. Further, Plaintiffs have retained qualified attorneys who are experienced in class action and wage and hour litigation. Plaintiffs' counsel has prosecuted numerous wage and hour and class action lawsuits on behalf of thousands of individuals. Moreover, the class representatives and class counsel have demonstrated their service to the class over the past four years of prosecuting the classes' interests and not their own. Thus, Plaintiffs satisfy the adequacy requirement of Rule 23(a)(4).

### b. The Class Satisfies the Requirements of Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

21

Plaintiffs' proposed Class satisfies both the "predominance" and "superiority" requirements of Rule 23(b)(3).

### i. Questions of Law or Fact Common to All Class Members Predominate.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. It does not require that each element of the plaintiffs' claims be susceptible to class-wide proof. *Amgen*, 568 U.S. at 469. It also does not require that the common questions will be answered, "on the merits," in favor of the class. *Id.* at 459-60. Rather, when determining whether common questions predominate, the court asks whether, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class. *See Blades v. Monsanto Co*., 400 F.3d 562, 566-67 (8th Cir. 2005). And, importantly, when there are issues common to the class that predominate, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Day v. Celadon Trucking Servs., Inc.*, 827 F. 3d 817, 833 (8th Cir. 2016) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

In evaluating predominance, courts are mindful that "[p]redominance is a qualitative rather than a quantitative concept. It is not determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (internal citation omitted).

Common questions predominate in establishing Defendants' liability under Plaintiffs' claims. To prevail, Plaintiffs must establish that the class members at issue are entitled to overtime compensation. The answer to these questions will predominate over all other questions in the case.

22

It is unlikely that any individual issues would remain because Plaintiffs could prove the amount of overtime based on Epic's payroll records. But even if any individual questions were to remain they would be outweighed by the common questions at issue.

### ii. Class Treatment is the Superior Method for Adjudicating These Claims.

In addition to predominance, Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." The superiority analysis "requires the Court to determine whether the class action is manageable, taking into consideration choice of law determinations, notice to class members, etc." *Cope*, 319 F.R.D. at 557. However, "dismissal for management reasons is never favored….[and] lack of manageability justifies denial of certification 'only where the attention and resources which would have to be devoted strictly to administrative matters will overwhelm any relief ultimately accruing to the plaintiff class.'" *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-04321-NKL, 2013 WL 3872181, at *15 (W.D. Mo. July 25, 2013) (citations omitted).[8]

Consolidating all claims into a single litigation is in the best interest of the Class members and the court system. Indeed, it would be judicially inefficient for these claims to be spread among multiple jurisdictions given that the same legal theories and evidence will be used by all Class members. And prosecuting the exact same claims across multiple jurisdictions runs the risk of creating inconsistent rulings on identical claims. It is, therefore, desirable to consolidate those claims in this Court. Class counsel will be able to present this case on a class-wide basis as

---

[8]      *See also Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015) (noting it is a "well-settled presumption" that "courts should not refuse to certify a class merely on the basis of manageability concerns") (citing cases).

efficiently as on an individual basisand in less time than prosecuting multiple claims in different jurisdictions.

Because all class members were subject to the alleged policy of not overtime, the class is cohesive and should be readily settled for settlement purposes.

### 3.      The Requested Service Awards are reasonable.

Plaintiffs seek a service payment for the Named Plaintiff and the class members who provided deposition testimony. The total requested service award constitutes approximately 1% of the total settlement fund. Through the course of more than four years they participated in countless meetings with Plaintiffs' counsel, were deposed, attended mediations, and traveled from Puerto Rico on multiple occasions.

Compensation for named plaintiff can be handled in two different ways. Generally they are referred to as the Bonus Method and the Preferential Treatment Method. While these two approaches are analytically distinct, courts rarely distinguish between them and typically rely on the same kinds of factors to evaluate and justify them.

**Bonus Method**

The first method is for named plaintiff to receive a share of the monetary class fund like any other class member and then receive a separate cash bonus payment for serving as a named plaintiff. The Bonus Method analysis typically looks at the effort, risk and benefits to the class provided by the class representatives.

**Preferential Treatment Method**

The second approach – and the source of much confusion in the case law – is for the named plaintiffs to receive one payment under the terms of the class settlement that is greater than that available to the ordinary class member. Under the latter method, the district court will analyze

24

whether there is an adequate rationale for additional compensation to the named plaintiffs and consider the payment in light of the overall fairness of the settlement.

There is no consistent legal standard for the evaluation and approval of incentive awards. While the U.S. Supreme Court has never directly addressed incentive awards to named plaintiffs, federal case law highlights a number of factors which may be relevant to the inquiry. In *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998), the Seventh Circuit provided a list of some pertinent considerations:

> Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit. . . . In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.

*Cook*, 142 F.3d at 1015 (citation omitted).

As another example, in *Van Vranken v. Atlantic Richfield*, 901 F.Supp. 294 (N.D. Cal. 1995), Judge Williams articulated a different list:

> The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Id*. at 300.

Most fundamentally, courts will evaluate named plaintiff awards by looking at the overall benefits of the settlement and by comparing the named plaintiff's award to the range of monetary recovery available to the class. *See e.g. Ingram v. Coca-Cola,* 200 F.R.D. 685, 694 (N.D. Ga. 2001); *Roberts v. Texaco*, 979 F.Supp. 185, 204 (S.D.N.Y. 1997); *Sheppard v. Consolidated Edison*, 2000 U.S. Dist. LEXIS 20629 at 16-17 (E.D.N.Y. 2000). The purpose of this inquiry is to

ensure that special benefits to the class representatives have not compromised the adequacy of representation.

Apart from the proportionality inquiry, courts will evaluate what the named plaintiffs have done to earn the incentive award.

Many courts have focused on the need to encourage litigants to bring class litigation, which will further the public policy underlying the statutory scheme. *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("We also think that there is something to be said for rewarding those drivers who protect and help to bring rights to a group of employees who have been the victims of discrimination"); *Denney v. Jenkins & Gilchrist*, 2005 WL 388562 *31 (S.D.N.Y. 2005) ($10,000 award approved where class representatives were in a "position to capitalize on lawsuits already filed to attempt to get a full or at least far greater recovery for themselves"); *Roberts v. Texaco*, 979 F. Supp. 185, 201 n. 25 (S.D.N.Y. 1997); *In re Smithkline Beckman Corp. Securities Litig.*, 751 F. Supp. 525, (E.D.Pa. 1990) ($5000 award approved because named plaintiffs "rendered a public service" and "conferred a monetary benefit" on the shareholder class); *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985) (prison litigation in which active protesters received larger award than passive participants).

Named plaintiffs, particularly in employment litigation, have earned incentive awards for running the risk of retaliation in the workplace.

> [T]he plaintiff is frequently a present or past employee whose present position or employment credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril.

*Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y.1997). *See also, Women's Committee for Equal Employment Opportunity v. National Broadcasting Co*, 76 F.R.D. 173, (S.D.N.Y. 1977) (court weighed "risk to job security and good will with co-workers" among other considerations); *Yap v.*

26

*Sumitomo Corp. of America*, 1991 U.S. Dist. LEXIS 2124 (S.D.N.Y. 1991) (Title VII plaintiffs risked retaliation and future advancement in bringing the suit).

In this matter, the Parties have agreed to provide the Mr. Albelo and others who served the class as a whole during the four years of litigation service awards totaling approximately 1% of the Gross Settlement Fund. Individual participants will have been allocated portions of the Service Award, ranging from 0.0006% of the total settlement fund to 0.006%. The reason for the service payments is to ensure that the individuals who chose to participate and provide invaluable information about the company, its policies, procedures, and information regarding the Defendant and its owners are compensated for the risk that they undertook in bringing this action. But for their actions, Defendant would have retained the benefit of its failure to pay its laborers, foremen and drivers overtime premiums. These individuals should be rewarded to encourage them and others who would be subject to future FLSA and state law violations to assert their rights to fair pay under state law and federal wage law.

Each of the participants necessarily took a risk by joining the litigation, and have actively participated in some way, including depositions, in-court appearances, travel to two separate mediations, Some of the recipients were currently employed by Defendant and risked retaliation for their participation in the wage claims. Each individual participating will forever be subject to background checks on employment applications, and there is significant risk that if an employer learns of their previous litigation, it would be less likely to hire the individual.[9]

While firm estimates are unknown, the participants participated in numerous telephonic and in-person meetings, in some cases, , responding to written discovery, testimony at depositions,

---

[9] Most importantly, such conduct, if it were to occur, would not be precluded by the FLSA's anti retaliation provisions, because the prospective employer would necessarily not be an employer of the individual, and thus would not be subject to the anti-retaliation provisions.

and represented various aspects of the classes' claims. In light of the nominal percentage of the settlement fund that the monies represent, Plaintiffs respectfully request that the incentive awards be approved.

Additionally, the Named Plaintiff took a risk by filing and attaching his name to the litigation. By lending his name to employment litigation he has risked reputation damage to current and future employers. He will forever be subject to background checks on employment applications, and there is risk that if an employer learns of his previous litigation, it may be less likely to hire him.[10] In light of the small percentage of the settlement fund that the monies represent, Claimants respectfully request that the incentive award be approved.

Courts recognize that the risk, time, and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above-and-beyond what other settling plaintiffs receive. *See Husein v. Bravo Brio Restaurant Group*, No. 16-cv-00435-DW, Doc. 48 (W.D. Mo. December 13, 2017) (approving service award to two named plaintiff and early opt in of $17,500 each)*; Hermsen v. City of Kansas City,* No. 11-cv-753-BP, ECF Doc. 115 (W.D. Mo. Sept. 22, 2014) (approving service award to named plaintiff in the amount of $42,282.12, representing 3% of the common fund); *Tussey v. ABB, Inc.*, No. 06-04305-CV-C-NKL, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) (approving $25,000 service awards for three class representatives); *Wolfert v. UnitedHealth Group, Inc.,* No. 4:08CV01643(TIA), at *4 (E.D. Mo. Aug. 21, 2009) (approving incentive award of $30,000); *Matheson v. T-Bone Rest.*, LLC, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff

---

[10] *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 266–67 (N.D. Cal. 2015) ("Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers.").

in tip pool/OT case settlement after two-and-a-half years of litigation); *Mentor v. Imperial Parking Sys., Inc.*, 2010 WL 5129068, at *5 (S.D.N.Y. Dec. 15, 2010) (approving $40,000 service award to named plaintiff in FLSA settlement after five years of litigation); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement after three years of litigation).

Given the importance of the assistance provided by the Class Representatives the Class Deponents, and those providing active service to the Class, including discovery responses, these Service Awards are reasonable.

### III.     Approval of the FLSA Class Settlement

The standard for court approval is straightforward under the FLSA: a district court should approve a fair and reasonable settlement if it was reached as a result of contested litigation to resolve a bona fide dispute under the FLSA. *Garcia v. Triumph Foods*, Case No. 11-6046-CV-SJ-ODS (W.D. Mo. July 12, 2012) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)). First, the court must be satisfied that the settlement was the product of "contested litigation." *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the Parties under the FLSA. *Id.* Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms'-length settlement as *indicia* of fairness. *Id.* If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.* Plaintiffs respectfully submit that this Court should conclude that the parties' settlement is a reasonable resolution of a *bona fide* dispute in contested litigation.

This settlement was the product of arm's-length negotiations by experienced counsel after

more than four years of litigation and provides meaningful, significant, monetary relief to all party Claimants. It also eliminates the very real and inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

The litigation was contested and settled after three mediations. Only after years of discovery, data analysis and shuttle diplomacy via the mediation process, were the parties able to reach an accord. Serious questions of fact and law existed that placed the ultimate outcome of the litigation in doubt.

The settlement offers a significant payment to the Plaintiffs and participating class members now. Participating class members will receive meaningful awards after costs and attorneys' fees depending on the amount of time worked in a covered position. Further, if the settlement is not approved, any recovery through litigation may not occur until after years of litigation and appeals.  Or, such recovery may not occur at all after trial and appeal. For these reasons, settlement approval now should be highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive

litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *see also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Little Rock School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

## CONCLUSION

The settlement presented is an immediate, real, substantial, and fair settlement. Claimants, therefore, respectfully request that the Court approve the settlement as provided in Exhibit 1.

Respectfully submitted,

**THEHODGSON LAW FIRM, LLC**
/s/ Michael Hodgson
Michael Hodgson   MO Bar No. 63677
3609 SW Pryor Road
Lee's Summit, MO 64082
(o) 816-600-0117
(f) 816-600-0137
mike@thehodgsonlawfirm.com

**REBEIN BROTHERS, P.A.**

By: */s/ Pablo Mose*
Paul ("Pablo") H. Mose, MO Bar #68287
810 Frontview
Dodge City, KS 67801
O: (620) 227-8126
F: (620) 227-8451
Pablo@rbr3.com

**BERTRAM & GRAF, L.L.C.**

By: */s/ Timothy R. West*
Timothy R. West, KS Bar #23892
2345 Grand Boulevard, Suite 1925
Kansas City, Missouri 64108
Telephone:  (816) 523-2205
Facsimile:   (816) 523-8258
Email:  tim@bertramgraf.com

31

*Attorneys for Plaintiffs*

*Attorneys for Plaintiffs and the Collective Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2021, the proceeding was filed using

the Court CM/ECF System, which gives notice to the following:

Eric W. Barth
**HINKLE LAW FIRM LLC**
1617 North Waterfront Parkway, Suite 400
Wichita, Kansas 67206
E-mail: ebarth@hinklaw.com

Charlie Rosebrough
**SHOOK, HARDY & BACON, L.L.P.**
2555 Grand Boulevard Kansas City, Missouri 64108-2613
TEL: 816.474.6550
FAX: 816.421.5547
Email: crosebrough@shb.com

*Attorneys for Defendants*

/s/ Michael Hodgson