# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| RADAMES MOLINA ALBELO, o/b/o himself and all other persons similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| EPIC LANDSCAPE PRODUCTIONS, L.C., | ) ) ) |
| Defendant. | ) |

Case No.: 4:17-cv-0454-DGK

## ORDER DENYING PROPOSED SETTLEMENT

This is a collective action lawsuit seeking to recover unpaid wages and overtime pursuant to the Fair Labor Standards Act ("FLSA"). The Second Amended Complaint also asserts Rule 23 class action claims for various state law causes of action. Now before the Court is Plaintiff Radames Molina Albelo's ("Albelo") Unopposed Motion for Preliminary Settlement Approval, ECF No. 260, and the proposed settlement agreement ("Settlement"), ECF No. 260-1.

Although the Court appreciates the parties' earnest efforts to reach a compromise, the Settlement does not meet the requirements of Fed. R. Civ. P. 23(e), (g), and (h). That said, the Court believes it is possible the parties will be able to fashion a revised settlement that addresses the Court's concerns and will merit approval. The motion for preliminary approval is, therefore, DENIED WITHOUT PREJUDICE.

Because time is of the essence, the Court has written a much shorter order than it typically would when denying approval of a proposed settlement. *See*, *e.g.*, *Allicks v. Omni Specialty Packaging, LLC*, No. 4:19-CV-1038-DGK, 2020 WL 5648132 (W.D. Mo. Sept. 22, 2020); *Molloy v. Hoambrecker Enterprises, LLC*, No. 5:19-06030-DGK (W.D. Mo. April 20, 2020).

This order outlines the Court's concerns with the Settlement. It does not include a summary of the Settlement or an extensive discussion of applicable law. The Court's aim is to give guidance to the parties as quickly as possible so that if this case can be fairly settled before trial, it will be.

Contemporaneously with this order, the Court is releasing orders on three dispositive motions. The Court was reluctant to issue these orders previously because the parties were attempting to negotiate a settlement, and the Court did not want to "blow-up" any tentative settlement before the Court could consider it. Because this case is more than four years-old and the trial is only three weeks away, the Court cannot withhold ruling on these motions any longer.

Although the Court encourages the parties to renew their efforts to settle this case, they should continue to actively prepare for trial.

I. **The following are major areas of concern.**

The most concerning feature of the Settlement is that it is a claims-made settlement with a reversion provision, combined with what appears to be a clear-sailing provision on attorneys' fees.[1]

Reversion provisions are disfavored in FLSA collective-action cases. *Vinsant v. MyExperian, Inc.*, No. 2:18-CV-2056-PKH, 2019 WL 2518143, at *3 (W.D. Ark. June 18, 2019) ("Reversion provisions are repugnant to the FLSA"); 4 *Newberg on Class Actions* § 12:29 (5th ed. 2019) (noting reversionary funds have become so disfavored in class actions that their use has receded in the past decade). Courts rightly object "to such provisions in claims-made settlements because they can be used as a collusive vehicle resulting in significant fees for class counsel, a low payout by defendants, and limited benefits to the class." Michael J. Puma & Justin S. Brooks,

---

[1] Under a clear sailing agreement, "the defendant agrees not to contest the amount awarded by the court presiding over the settlement as long as the award falls beneath a negotiated ceiling." William D. Henderson, Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements, 77 Tul. L. Rev. 813, 814 (2003).

2

*Navigating Developing Challenges in Approval of Class and Collective Action Settlements*, 28 A.B.A. J. Lab. & Emp. L. 325, 329 (2013). These effects are the "byproduct" of the "percentage-of-the-recovery" approach used here whereby "class counsel receives a percentage (twenty-five or thirty-three percent in most cases) of the maximum settlement fund," but the defendants' actual payout to class members is based on participation rates. *Id*. (emphasis omitted). If participation is low, the defendants receive a large reversion, which significantly reduces their total payout, while the plaintiffs' attorneys still receive their full fees based on the maximum settlement amount.

The reversion provision is a red flag particularly since the settlement also contains a "clear sailing" agreement on attorneys' fees, thereby ensuring there will be no adversarial briefing to alert the court to potential issues. *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) ("[W]hen confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."); *see also* 4 *Newberg on Class Actions* § 12:29 (5th ed. 2019) (noting "because class counsel's fees may be pegged to the size of the fund made available (prior to reversion), a reversionary fund may be a warning that counsel has undersold the class's claims.").

The claims procedure—which requires each class member to submit a formal claim to receive a settlement check, even though doing so serves no useful purpose and appears designed to lower participation rates—is also a red flag.. As a leading treatise has observed:

> The simplest and most effective method for getting damages to class members is to distribute the funds without requiring class members to file any claim. This can be done if damage awards are based on the defendant's records and are easily calculable therefrom. For example, in an employment case, the defendant's employee records

> could be used to identify precisely who was entitled to that pay, for how many hours, and at what rate.

4 *Newberg on Class Actions* § 12:15 (5th ed. 2019). The situation described above is analogous to that here: the putative class members' damage awards are easily calculable from information in Defendant's possession. In fact, as part of the proposed notice, each class member will be notified of the exact estimated amount he or she will receive under the settlement. Because the class members are all former employees, Defendant has contact information (albeit dated), for each class member. Thus, the parties have the ability to mail each class member a settlement check along with a short description of what the check is for, and an explanation that by endorsing and cashing the check, the class member will be settling all of his or her claims. This approach would be the simplest and most effective method for maximizing participation.

Instead, the Settlement mandates a claims-made process which dictates that class members be notified only by mail, and that in order to receive a check, a class member must submit a formal claim. This procedure is unnecessary and departs from recognized best practices.

**II.     Other areas of concern.**

The Court has several other concerns with the Settlement which do not rise to the level of "deal-breakers." These concerns are as follows, in no particular order.

1.      The Settlement does not provide a clear and consistent definition of exactly who is in the settlement class. At various places, the Settlement refers to "a class of all laborers, foremen and drivers during the class period." Settlement Agreement at ¶¶ 2.B., 6.A., 7.C.iv. But there are also references to laborers, foremen, and mechanics. ¶¶ 4.A.i., ¶ 7.C.iv. This confusion is probably the result of the Court's directive for the parties to reduce their tentative settlement agreement to writing as quickly as possible and file it with the Court, but it needs to be clarified.

2. The Court also has significant concerns with whether Albelo is qualified to act as a class representative for the entire class. The Settlement proposes he be the sole class representative for the entire settlement class, H-2B workers with contract claims, other class members with unjust enrichment claims, and members of an expanded class for settlement purposes including foreman, drivers, and mechanics. As discussed in the companion order denying class settlement, the Court has concerns with whether he has standing to do so.

3. The motion for settlement approval's explanation as to why the proposed settlement amount is fair and reasonable is insufficient. That is, there is insufficient explanation as to why the settlement amount is fair in light of the strength of the class members' claims, or why the formula to allocate the settlement proceeds is fair—particularly to the class members who worked the greatest amount of overtime. The allocation is based on how many total hours the employee worked, not a calculation of how many *overtime* hours the employee worked, as is typical.

4. The procedure and dates proposed by the parties for objecting and opting-out are problematic because they do not allow a class member to object and, if the concern is not addressed to the member's satisfaction, opt out. This effectively discourages class members who dislike some aspect of the Settlement from objecting, since if they object and the Court does not resolve the objection to their satisfaction, they cannot opt-out. Objections should not be discouraged; they perform a useful role in the approval process by bringing any deficiencies in a proposed settlement to the Court's attention. A better practice is to allow any class members who wish to object to do so, learn the Court's ruling on the objection, and then determine whether they wish to opt out. Obviously, this requires setting different deadlines for objecting and opting out, and potentially holding a preliminary fairness hearing.

Additionally, the requirement to object or opt-out should not be any more onerous than necessary. Filing a short notice or objection with the Court is, in the Court's experience, more than sufficient to satisfy the parties' legitimate needs.

5. Although much of the proposed notice procedure is excellent, there does not appear to be any provision for providing notice in Spanish. Given that a substantial portion of the class appear to be native Spanish speakers, notice should be provided in Spanish as well.

6. The Court also has concerns with the confidentiality provision, which "will keep the terms of this settlement confidential, to the extent permitted by law." Settlement Agreement ¶ 13. While it does not forbid any discussion of the Settlement, any confidentiality provision is problematic since FLSA settlements are presumptively open to the public. *Jessup v. Luther*, 277 F.3d 926, 928-930 (7th Cir. 2002) (Posner, J.); *In re Sepracor Inc. FLSA Litigation*, MDL No. 2039-DGC, 2009 WL 3253947, at *1-2 (D. Ariz. Oct. 8, 2009) (noting that a strong presumption exists for keeping FLSA settlement agreements unsealed and available for public view); *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1263 (M.D. Ala. 2003) (noting the presumption in favor of openness is strongest when the document at issue is an FLSA wage-settlement agreement). A confidentiality provision is also inconsistent with Congress's intent in enacting the FLSA, which was to protect workers from substandard wages and oppressive working hours. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). The confidentiality provision will impede the flow of information to workers who may also have viable overtime wage claims.

7. Aside from the amount of attorneys' fees awarded to class counsel, the Court has concerns with the timing of the payments. To ensure that Class counsel has a financial incentive to respond to class members' questions and inquiries, the Court is unlikely to approve any settlement where, as here, Class counsel will receive their attorneys' fees before the class members receive their

payment. The Court is inclined to withhold dispersing a reasonable amount of attorneys' fees until after their clients have received their settlement checks, the deadline to cash the checks has expired, and the Settlement Administrator files a final report.

8. Related to this, the Court is concerned that the proposed notice does not unambiguously direct class members who have concerns or questions about the Settlement to contact Class counsel. While it lists Class counsel's name and contact information, it does not explain that class members should contact them with any questions or concerns. It only states, "Questions? Visit [settlement website] or call [settlement toll-free number]"; and "If you have any questions regarding this notice, you can contact the Settlement Administrator" by telephone or email." Proposed Notice attached to Settlement Agreement at p.7.

The motion for preliminary approval is, therefore, DENIED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Date: June 28, 2021　　　　　　　　　　　　/s/ Greg Kays
　　　　　　　　　　　　　　　　　　　　　GREG KAYS, JUDGE
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT