# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| RADAMES MOLINA ALBELO, o/b/o himself and all other persons similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) Case No.: 4:17-cv-0454-DGK |
| v. | ) ) |
| EPIC LANDSCAPE PRODUCTIONS, L.C., | ) ) ) |
| Defendant. | ) |

## ORDER GRANTING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This is a collective action lawsuit seeking to recover unpaid wages and overtime pursuant to the Fair Labor Standards Act ("FLSA"). The Second Amended Complaint ("the Complaint"), ECF No. 34, also brings Rule 23 class action claims for various state law causes of action.

Now before the Court is Defendant Epic Landscape Productions, L.C.'s ("Epic") Motion for Partial Summary Judgment. ECF No. 209. Epic moves for summary judgment on each of Plaintiff Radames Molina Albelo's ("Albelo") state law claims--Counts II through VII. The Court finds Epic has demonstrated it is entitled to judgment as a matter of law on Counts III, V, VI, and VII, and a portion of Count II; thus, the motion is GRANTED IN PART.

**Standard**

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

court makes this determination by viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).

## Material Undisputed Facts

The Court finds the material undisputed facts to be as follows.[1] Epic employed Albelo as a laborer in its Landscape Production Division and at its Gardner, Kansas, location.

Representatives of Epic traveled to Albelo's hometown in Puerto Rico to recruit workers and held a meeting about employment opportunities with Epic. Epic advertises in Puerto Rico to recruit workers, and in these advertisements Epic claims overtime is available. Albelo, however, does not recall seeing any advertisements for this meeting; he learned about the meeting through word of mouth. Albelo does not recall anything that was said during this meeting, nor does he recall seeing any type of job advertisement prior to becoming employed by Epic.

Albelo filled out and signed a job application for the position with Epic. He does not remember anyone at Epic representing to him that Epic would pay him overtime compensation, nor does he recall seeing any documents mentioning Epic would pay him overtime compensation. He does not remember filling out any kind of written employment contract with Epic, and he does not have one in his possession.

---

[1] The Court has limited these facts to those that are undisputed and material to the pending summary judgment motion. Excluded are legal conclusions, argument presented as fact, and proposed facts not properly supported by admissible evidence. The Court has also included inferences from undisputed material facts and facts the opposing party has not controverted properly. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

Epic paid Albelo $12.79 per hour for all hours he worked while at Epic. It did not pay him an overtime rate of pay for hours worked in excess of forty hours in a week.

When he came to work for Epic, Albelo lived with other Epic workers at the Lennox Apartments, located in Olathe, Kansas. Neither Albelo nor any of the other Epic workers are named on any of the rental agreements. Rather, the Lennox Apartments' rental agreements are with Epic, and Epic deducted money from Albelo's paycheck to pay for the apartment. Whether Albelo authorized Epic to deduct rent and rent-related expenses (such as rental insurance) from his paycheck, as Epic suggests, is in dispute.[2]

On the other hand, the parties agree Epic advanced Albelo cash for traveling from Puerto Rico to work in Kansas. When Epic advanced Albelo $200 in cash, he authorized Epic to take that $200 out of his paycheck at a later date. Albelo does not have any evidence that any of Epic's deductions from his paychecks dropped him below the federal minimum wage rate of $7.25 per hour.

---

[2] Albelo's employment application, which he signed, states:

> 7. I hereby consent to employer withholding wages or remuneration from my paycheck to (a) obtain repayment of any loan(s) or advance(s), (b) recover any payroll overpayment, and/or (c) recoup costs associated with unpaid merchandise or uniforms purchased by me.
>
> 8. I hereby consent to employer withholding wages from my final paycheck to (a) recover property provided to me that I have not returned (including, but not limited to cell phones and equipment), (b) obtain repayments of any loan(s) or advance(s), (c) recover payroll overpayment, and/or (d) recoup the cost or unpaid balance of merchandise, uniforms, or equipment purchased by me. Furthermore upon termination, I agree to return any and all Confidential employer information.

Exh. 4 to Suggestions in Supp., Employment Application (English translation) at 2; ECF No. 210-4. Albelo's testimony on this point is confusing and somewhat contradictory; he appears to be saying some deductions were authorized, but others were not. The employment application form itself does not specifically authorize deductions for rent payments or rental related expenses. Given that deductions for relatively inexpensive items, like uniforms, are specifically mentioned in the authorization, but deductions for a much larger expenses, like rent for employer provided housing, are not, one could reasonably infer the form did not authorize deductions for rent or rental expenses. Hence, the proposed fact has not been established as undisputed.

**Discussion**

I. **Epic is entitled to summary judgment on a portion of Count II, that is, any Missouri state law claim that Albelo was not paid minimum wage,.**

The parties agree that Albelo lived in Kansas and worked out of Epic's Gardner, Kansas, office, so Kansas state wage law is potentially applicable to Albelo. The parties also apparently agree that Albelo worked for Epic in Missouri, thus he could potentially have claims arising under Missouri law. Count II alleges Epic failed to pay earned wages and overtime in violation of Missouri law, citing to various provisions of Missouri's Minimum Wage and Maximum Hours Laws ("MMWMHL").

Epic argues it is entitled to summary judgment on Albelo's MMWMHL claims because they are preempted by the FLSA. Additionally, or alternately, Epic argues that to the extent Albelo is claiming he was not paid *minimum wage* under Missouri law for all hours worked, it is entitled to summary judgment because the record shows he was always paid at least the minimum wage.

With respect to Epic's preemption argument, the Court holds it is insufficiently developed. Epic does not expressly explain whether the basis for this claim is "express preemption," "field preemption," or "conflict preemption,"[3] nor does it explain precisely how the FLSA allegedly preempts Albelo's MMWMHL claim. It appears the common thread running through the cases cited by Epic is "obstacle preemption" (a subset of conflict preemption), so the Court concludes Epic is claiming obstacle preemption. Suggestions in Supp. 17–18, ECF No. 210 (providing string citation). But even after identifying what kind of preemption Epic is claiming, the Court still cannot determine exactly how Epic contends it preempts Albelo's

---

[3] "State law is preempted if the Court determines that (1) Congress expressly preempts state law; (2) Congress has regulated pervasive conduct in a field manifesting its intent to preempt state law; or (3) the state law conflicts with federal law." *Osby v. Citigroup, Inc.*, No. 07-CV-06085-NKL, 2008 WL 2074102, at *2 (W.D. Mo. May 14, 2008).

MMWMHL claim. Is Epic claiming that the FLSA provides such an "unusually elaborate enforcement scheme" that it displaces all state common law claims, as suggested in *Anderson v. Sara Lee Corporation*? 508 F.3d 181, 193–195 (4th Cir. 2007). Or is it arguing the FLSA's opt-in collective action procedure fundamentally conflicts with bringing a state law claim under Rule 23's opt-out procedure, as held in *Zanders v. Wells Fargo Bank, N.A.*? 55 F. Supp. 3d 1163, 1173 (S.D. Iowa 2014). The analysis and holdings in these cases are fact specific, and much of it is not applicable to the facts here. For example, in *Anderson* the Fourth Circuit noted, "[t]he Class members do not contend . . . that any North Carolina law entitles them to unpaid wages." 508 F.3d at 193. But Albelo contends he is entitled to recovery under a specific Missouri statute, namely § 290.505. Likewise, the *Zanders* analysis is not applicable here because it concerned how the different *classes* of claims brought in that case were incompatible with each other, whereas the pending motion here is about a single individual's claim, and not class claims.

At any rate, Epic's preemption argument is unpersuasive. As Epic acknowledges, no court in the Western District of Missouri has held the FLSA preempts claims brought under the MMWMHL. *See*, *e.g.*, *Robertson v. LTS Mgmt. Servs. LLC*, 642 F. Supp. 2d 922, 928 (W.D. Mo. 2008) (J. Gaitan); *Osby v. Citigroup, Inc.*, No. 07-CV-06085-NKL, 2008 WL 2074102, at *2 (W.D. Mo. May 14, 2008). After carefully reviewing these decisions and those cited by Epic, the Court finds the Western District of Missouri decisions, which deal specifically with Missouri wage and hour law, are better reasoned and more persuasive on the issues presented in this case. *See also Tinsley v. Covenant Care Servs., LLC*, No. 1:14CV00026 ACL, 2016 WL 393577, at *4–5 (finding "the opinions of the district courts within the Eighth Circuit . . . persuasive and adopt[ing] the view that the FLSA does not preempt Plaintiffs' state law claims"). The Court holds the FLSA does not preempt Albelo's MMWMHL claim.

As for Epic's contention that it is entitled to summary judgment on any Missouri state law claim that Albelo was not paid minimum wage, the Court notes the Complaint does not specifically assert any such claim (at least not clearly),[4] nor does Albelo contest granting Epic summary judgment on such a claim. The Court holds Epic is entitled to summary judgment on any claim that he was not paid the applicable minimum wage under Missouri state law, as alleged in Count II.

## II. Epic is entitled to summary judgment on Count III.

Albelo concedes Epic is entitled to summary judgment on Count III, his Kansas Wage Payment Act ("KWPA") claim. This claim fails because the KWPA only requires employers to "pay all wages due to the employees of the employer at least once during each calendar month, on regular paydays designated in advance by the employer." Kan. Stat. Ann. § 44-314(a). The Kansas Supreme Court has observed the KWPA controls several aspects of workers' wages and benefits not covered by the FLSA. *Craig v. FedEx Ground Package Sys., Inc.*, 335 P.3d 66, 73 (Kan. 2014). It "does not contain any express provision relating to the payment of overtime, which is typically pursued under a FLSA claim." *Id*. The weight of federal authority applying Kansas law holds the KWPA is not a mechanism to recover unpaid overtime wages under state law. *See Charbonneau v. Mortg. Lenders of Am., L.L.C.*, No. 2:18-CV-2062-HLT-ADM, 2020 WL 3545624, at *11 (D. Kan. June 30, 2020) (observing the better reasoned cases support this view, but three District of Kansas cases have ruled otherwise).

---

[4] Several paragraphs in Count IV allege that by making improper deductions from employees' paychecks, Epic caused them to be paid below the required minimum wage. Compl. ¶¶ 96–99. Although Count IV appears to be alleging a violation of Kansas state law, it is conceivable Albelo is arguing he was not paid the requisite minimum wage under Missouri law either.

**III.    Epic is not entitled to summary judgment on Albelo's claims that deductions from his paycheck violated the Kansas Wage Payment Act, Count IV.**

Epic argues it is entitled to summary judgment on Albelo's claims that Epic's deductions from his paychecks were improper and violated the Kansas Wage Payment Act ("KWPA"). Epic contends no reasonable factfinder could find Epic violated with KWPA when it withheld portions of Albelo's wages. The existing record does not support this conclusion.

The KWPA provides that "'no employer may withhold, deduct or divert any portion of an employee's wages' except in limited circumstances." *Id.*, at *11. There are two possibly applicable exceptions here: first, where "the employer has a signed authorization by the employee for deductions for a lawful purpose accruing to the benefit of the employee," Kan. Stat. Ann. § 44-319(a), and second, where the deduction is made "pursuant to a signed written agreement between the employer and employee," and is made "[t]o allow the employee to repay a loan or advance which the employer made to the employee during the course of and within the scope of employment," Kan. Stat. Ann. § 44-319(b)(1). Epic argues the existing record shows Albelo made signed, written authorizations approving all deductions, and that the deductions were either made for Albelo's benefit or to repay an advance.

As discussed in the Material Undisputed Facts section, the record is more equivocal than Epic suggests. While Albelo did authorize deductions from his paycheck to repay some advances, a reasonable factfinder could find Albelo did not authorize Epic to deduct money for rent or related expenses. Accordingly, Epic's motion for summary judgment on this claim is denied.

**IV.    Epic is entitled to summary judgment on Albelo's quantum meruit and unjust enrichment claims, Counts V and VII respectively.**

Finally, Epic moves for summary judgment on Albelo's quantum meruit and unjust enrichment claims, Counts V and VII respectively. Epic argues Albelo cannot prevail on either claim because both are forms of equitable relief, and he is not entitled to equitable relief because: (1) statutory remedies are available to address his claims; and (2) he cannot show a reasonable expectation of overtime compensation.[5] Epic cites relevant caselaw for the former proposition. *See Garcia v. Tyson Foods, Inc.*, 766 F. Supp. 2d 1167, 1188 n.17 (D. Kan. 2011).

A header in Albelo's brief states he opposes granting Epic summary judgment on his quantum meruit claim, but the body of the brief does not mention quantum meruit, much less explain how such a claim survives summary judgment. *See* Suggestions in Opp'n at 12–13, ECF No. 221. Because there is no explanation of how his quantum meruit claim can survive, the Court treats this claim as conceded.

With respect to his unjust enrichment claim, Albelo's brief incorporates by reference Plaintiffs' suggestions in support of their own motion for summary judgment. *Id*. at 12 ("As explained in Plaintiffs' Motion for Summary Judgment [Doc. 216], Plaintiffs have affirmatively established entitlement to their unjust enrichment claim."). This briefing, however, concerns the unjust enrichment claims of collective action class members who held H-2B visas, which Albelo did not. *See* Suggestions in Supp of Pls.' Mot. for Summ. J. at 44–45, ECF No. 216. Albelo attempts to piggy-back his unjust enrichment claim on their claims by arguing Epic must confer on its "U.S. workforce"—that is, himself and other class members living in the United States— "the same benefit that it promised to immigrant laborers." *Id*. But this argument is not developed

---

[5] Epic argues Kansas law governs any quantum meruit or unjust enrichment claims Albelo may have. Albelo suggests the elements for these claims are identical under Kansas and Missouri law. Finding no conflict of law exists, there is no need to perform a choice of law analysis.

further nor is it supported by citation to relevant caselaw.  Consequently, it is unpersuasive.

Considering the lack of any persuasive argument to the contrary, the Court holds Epic is entitled to summary judgment on Albelo's quantum meruit and unjust enrichment claims.

**V.      Epic is entitled to summary judgment on Count VI.**

Finally, Albelo concedes Epic is entitled to summary judgment on his breach of contract claims, Count VI.  Albelo's contract claim fails because it is undisputed that he had no written or implied contract with Epic requiring it to pay him overtime compensation.  The absence of a contract between Albelo and Epic is fatal to this claim.  *See Charbonneau*, 2020 WL 3545624, at *6 (noting the existence of a contract is the first element of a breach of contract claim).

## Conclusion

For the reasons discussed above, Epic has demonstrated it is entitled to judgment as a matter of law on Plaintiff Albelo's state law claims in a portion of Count II and all of Counts III, V, VI, and VII.  Epic's Motion for Partial Summary Judgment, ECF No. 209, is GRANTED IN PART.

**IT IS SO ORDERED.**

Date: June 28, 2021 /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT