# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **RADAMES MOLINA ALBELO** )<br>)<br>**On behalf of himself and** )<br>**all other persons similarly situated,** )<br>)<br>      **Plaintiff,** )<br>)<br>vs. )<br>)<br>**EPIC LANDSCAPE PRODUCTIONS,** )<br>**L.C.** )<br>)<br>      **Defendant.** ) | **Case No.: 4:17-cv-454-DGK** |

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT, along with all exhibits hereto (collectively, the "Agreement" or "Settlement"), resolves the matter captioned *Albelo, et. al. v. Epic Landscape Productions, L.C., Case No. 4:17-cv-454* (W.D. Mo.) ("the Litigation") and is entered into between Radames Molina Albelo, individually and on behalf of the FLSA Collective and Rule 23 State Settlement Class (collectively" "the Class" or "Class Members"); and Defendant Epic Landscape Productions, L.C.

## RECITALS AND BACKGROUND

1.     Plaintiff Radames Molina Albelo filed this case on June 5, 2017 in the United States District Court for the Western District of Missouri, alleging violations of the overtime protections of the Fair Labor Standards Act, the Kansas Wage Payment Act, Missouri Minimum Wage and Maximum Hours Law, and Kansas and Missouri state law for claims of breach of contract and unjust enrichment/quantum meruit.

2.      The Parties attended mediation in Kansas City, Missouri on June 22, 2021, with Judge Jay Daugherty, a renowned mediator in complex litigation, including wage and hour class action litigation. After 17 hours of negotiation, the parties were able to reach an accord.

3.      During formal discovery and prior to the mediation, the parties exchanged voluminous information, deposition testimony, data and documents necessary to fully and fairly evaluate the Class Members' claims, including employees' employment dates and duties, compensation data, weeks worked, and hourly pay of class members during the relevant time period.

4.      Named Plaintiffs and their counsel have investigated and evaluated the facts and law relating to the claims asserted in the Litigation. In light of the costs, risks, and delay of continued litigation balanced against the benefits of settlement to the Class, Named Plaintiffs and their counsel believe that the settlement as provided in this Agreement is in the best interests of the Class and represents a fair, reasonable, and adequate resolution of the claims in the Litigation.

5.      Epic denies and continues to deny any and all allegations of actual or potential wrongdoing and/or violations of law made by the Named Plaintiff and the Class Members in the Litigation. In fact, Epic relied upon good faith advice and judgment that everything it did was in accordance with the law.   Nonetheless, without admitting or conceding any liability or responsibility for damages, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement to avoid the burden, expense and uncertainty of continuing litigation.

### TERMS OF THE AGREEMENT

In consideration of the mutual promises herein contained and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

2

1. **Definitions Used in this Agreement**:

 A. **"Administrative Costs"** means (a) the costs of administration of the settlement by a third-party claims administrator pursuant to this Agreement, (b) all Service Payments to as described in Paragraph 3D of this Agreement, (c) the sum of $40,000.00 will held in trust as an "Allocation Correction Set-Aside" in order to make corrections to allocations.

 B. **"Agreement"** means this Settlement Agreement.

 C. **"Allocation Correction Set-Aside"** means the amount of the Gross Settlement Fund set aside to resolve disputes by Settling Plaintiffs or Existing Opt-ins related to their distributions, which shall equal $40,000.

 D. **"Attorneys' Fees and Costs"** means the amount paid to Class Counsel from the Gross Settlement Fund pursuant to Paragraph 3E, including all attorneys' fees and litigation expenses and costs incurred in the Litigation by Class Counsel (defined below) and retained and other associated counsel related to the pursuit of claims in the Litigation. Attorneys' Fees and Lawsuit Costs were negotiated by Class Counsel after the other principal material points of the settlement had been resolved. Class Counsel's attorneys fees application shall not exceed one third (1/3) of the Gross Settlement Fund (*i.e.*, Five Hundred Eighty-Three Thousand, Three Hundred and Thirty-Three dollars and Thirty-Three cents ($583,333.33)), subject to Court approval. Class Counsel may also apply for its reasonable costs incurred in connection with the Litigation up to an additional $25,000 as reimbursement of litigation costs and expenses.

 E. **"Claim Form"** means the Claim Form, which the Parties shall request be substantially in the form attached as Exhibit C.

 F. **"Claim Period"** means the period for filing claims, which shall be from the date of the first mailing of the Notice until 45 days thereafter,

G.        **"Claims Administrator"** shall mean the third-party claims administrator engaged to facilitate the notice and administration of this settlement, including, among other things, by creating and mailing notice packets, processing claim forms, addressing or responding to Class Member inquiries, advising Class Members of deficiencies in their claim forms, preparing affidavits to be filed with the Court and reports to counsel for the Parties, calculating Distribution Amounts, preparing and mailing of distributions of/from settlement funds, obtaining current addresses, preparing tax returns and paying any taxes owed on payments to Settling Class Members, Settlement Class Representatives, Class Counsel and/or any interest earned by the Qualified Settlement Fund (as defined herein)

H.        **"Class Counsel" or "Plaintiffs' Counsel"** means The Hodgson Law Firm, LLC, the Bertram & Graf, LLC, and Reiben Brothers, P.A.

I.        **"Epic"** refers to Epic Landscape Productions, L.C.

J.        **"Court"** means United States District Court for the Western District of Missouri.

K.        **"Epic's Counsel"** means Hinkle Law Firm LLC and Shook, Hardy & Bacon, L.L.P.

L.        **"Distribution Amount"** means the amount distributed to a Settling Plaintiff who submits a Valid Claim Form in accordance with this Agreement.

M.        **"Effective Date"** means the date on which the Final Judgment and Order Approving Settlement become Final (defined below in paragraph 5(a)(iv)).

N.        **"Preliminary Approval"** means the date the Court enters an Order "preliminarily approving" this Settlement and ordering notice of settlement to be sent to the Class,

including the procedure for notifying Class Members of their eligibility to participate in the Settlement. A proposed preliminary approval order is attached as Exhibit D.

O.       **"Final"** means, when used in connection with any court order or judgment, that the relevant order or judgment will be final and no longer subject to appeal.

P.       **"Final Approval Order"** means an order that finally and unconditionally grants final approval of the Settlement, grants final certification of the Rule 23 Class for settlement purposes only, authorizes payments to the Settling Plaintiffs, Named Plaintiffs, the Claims Administrator, and Settlement Class Counsel as provided in this Agreement, and fully and finally extinguishes the Wage and Hour Claims of the FLSA Settlement Class with respect to individuals having already opted into this lawsuit and the Rule 23 Class as set forth herein, which the Parties shall submit in a mutually agreed upon form.

Q.       **"FLSA Settlement Class"** means all existing opt ins who have previously consented to join this litigation.

R.       **"Gross Settlement Fund"** means the amount of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00). This payment includes the settlement allocations to all FLSA Existing Opt-Ins, and Rule 23 Class Settling Plaintiffs as described below, including any interest, liquidated and/or multiple damages, punitive damages, taxes; payroll taxes; Service Awards; and Attorneys' Fees and Costs; and Administrative Costs (as defined above). The gross settlement fund is based on the total number of Rule 23 class members and FLSA class members of 1,850. To the extent there is any increase in the number of individuals on the class list greater than 13% from 1,850, the parties agreed to use Judge Daugherty to negotiate a resolution of any issues.

S.       **"Named Plaintiffs"** means Plaintiff Radames Molina Albelo.

T.     **"Net Distribution Amount"** means the amount to be distributed from the Net Settlement Amount to Participating Settlement Class Members who submit Valid Claim Forms pursuant to the terms and conditions set forth in Paragraph 7(C)(iii) of this Agreement.

U.     **"Net Settlement Fund"** means the Gross Settlement Fund, less Administrative Costs, Attorneys' Fees and Costs, Allocation Correction Set-Aside, and Service Awards.

V.     **Rule 23 Class"** means an opt-out class of hourly laborers, foremen and drivers during time periods specified in Paragraph 2 below, and who do not opt-out of the litigation.

W.     **"Service Awards"** means payments for service provided by certain individual Class Members specified in Paragraph 3(D) below.

X.     **"Settlement"** means the terms of the settlement agreed to by the Parties and their counsel, as set forth in this Agreement.

Y.     **"Settlement Classes"** means the Rule 23 Class and the FLSA Settlement Collective.

Z.     **"Settlement Class Member"** means any member of the Rule 23 Class or FLSA Settlement Collective.

AA.     **"Settlement Class Representative"** means Radames Molina Albelo.

BB.     **"Settling Plaintiff"** means Class Members who participate in this Settlement by submitting a claim and executing a release as described below. However, all Existing Opt-Ins are considered to be Settling Plaintiffs even though they are not required to submit a claim or execute a release.

CC.     **"Spreadsheet"** means an electronic spreadsheet which includes the first and last name, last known addresses, state of employment, personal email addresses (if known),

6

employee ID numbers, social security numbers, eligible workweeks during the relevant class period and rates of pay.

DD.     **"Valid Claim Form"** means a completed and signed Claim Form that satisfies the requirements set forth in Paragraph 7(C)(iii), below.

EE.     **"Wage and Hour Claims"** means any and all suits, actions, causes of action, claims, or demands based on putative violations of the Fair Labor Standards Act, as well as any state or local law (both statutory and common law), pertaining or related to hours of work or payment of wages, including without limitation all claims that were asserted or could have been asserted in the Litigation based on the allegations in it, regarding events that occurred or are alleged to have occurred, by laborers, foremen and mechanic who worked for Epic within the applicable statute of limitations period(s).

## 2.     Class Period(s) and Settlement Classes

A.     This Agreement resolves FLSA and state law wage and hour claims by individuals who have previously filed a consent to join form in the Litigation (the Existing Opt-Ins), and state law claims by individuals who file Valid Claim Forms (thereby becoming Settling Plaintiffs), and state law claims of a class of all laborers, foremen and drivers during the class period.

B.     <u>Class Members Who Have Not Opted-Into the Litigation</u>**.** <u>This Agreement resolves state law wage and hour claims for breach of contract, quantum meruit and unjust enrichment only, by individuals who have Valid Claim Forms (thereby becoming Settling Plaintiffs), and state law claims of a</u> class of all laborers, foremen and drivers during the class period. The Class Period for Class Members who did not previously file a consent to join is June 5, 2012 to June 22, 2021.

7

C.      If the Court does not grant Preliminary and Final Approval of the Settlement or if the Effective Date does not occur for any reason, then the Rule 23 and FLSA Settlement Classes shall be deemed decertified, the settlement term sheet and the Settlement Agreement shall be null and void and of no further use or effect, and the parties will be returned to their respective positions in the Litigation *nunc pro tunc* as of the date of the term sheet, including the posture of the cases vis-à-vis certification under 29 U.S.C. § 216(b) and Rule 23, without prejudice to the Named Plaintiff's ability to seek, or Epic's ability to oppose, class certification under Rule 23 in the action. In this event, the settlement term sheet, this Agreement, and all information, negotiations and discussions leading to or arising out of those documents, shall not be used as evidence or for any other purpose in any lawsuit against Epic alleging any violation of any federal, state or local wage and hour laws or other common law claims. Further, if Final Approval or the Effective Date does not occur for any reason, any amounts funded pursuant to the terms identified herein, plus any interest earned thereon and less any Administrative Costs incurred, shall be returned by the Claims Administrator to Epic within five (5) days after notice to the Claims Administrator of such event.

### 3.      Settlement Fund and Allocation.

A.      Epic agrees to pay up to One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00), in order to fully and finally resolve the Litigation in its entirety, inclusive of all Attorneys' Fees and Lawsuit Costs; interest; Administrative Costs and liquidated, multiple and/or punitive damages; taxes; payroll taxes, and Service Awards, if any.

B.      Net Settlement Fund. Payments to Settling Plaintiffs will only be made to those who have submitted a Valid Claim Form or who are Existing Opt-in Plaintiffs, Settlement Class Representative. The payment will be in the form and manner specified below. Allocated amounts from the Net Settlement Fund which are not claimed shall revert to Epic.

C.        Allocation of the Net Settlement Fund. Each Settling Plaintiff shall be eligible to receive his or her proportionate share of the settlement fund based on the gross pay that a Settling Plaintiff received within the applicable statutory period(s) that the Settling Plaintiff worked as a laborer, foreman or driver as a percentage of the total gross pay paid to laborers, foremen and drivers that Epic paid during the applicable statutory period, then multiplied against the Net Settlement Fund.

D.    Service Payments.  The individual Named Plaintiffs and specific class members who performed various levels of service to the litigation shall receive, in recognition to their service contributions in the following amounts: Class Representative Radames Molina Albelo, $10,000.00; Deponents Justin Berry, Luis Castillo, Bruno Emanual-Ortiz, Eric Lara, Miguel Flores, Eric Gonzalez, Roberto Hernandez, Victor Lopez, Jose Mercado-Gonzalez, Awildo Otero, Richard Rodriguez and Francisco Vasquez: $1,000.00 each. These service payments are being sought in recognition of efforts to pursue the claims raised in this Litigation on behalf of the Class, including providing factual information and otherwise assisting Class Counsel with the prosecution of the litigation at various levels of participation. The service payments will be made at the same time and in addition to the payment of Attorneys' Fees, set forth in this Agreement. Any amounts allocated as service payments under this Agreement, but not approved by the Court, shall be re-allocated to the Net Settlement Amount, to be proportionally distributed to the Settling Plaintiffs.

E.    Attorneys' Fees and Costs.  Class Counsel will seek an award of attorney's fees in the amount of One-Third (1/3) of the Gross Settlement Fund ($583,333.33) as attorneys' fees, plus their costs, in an amount not to exceed $25,000.00.  Any amounts allocated as attorneys' fees

9

and costs under this paragraph, but not approved by the Court, shall be re-allocated to the Net Settlement Fund, to be proportionally distributed to the Settling Plaintiffs.

F. **Administrative Costs and Allocation Correction Set-Aside Fund.** Of the Gross Settlement Fund, $40,000.00 will be set aside for Settlement Administration and to correct any miscalculations or other errors in the allocation to Class Members. Any remainder more than 120 days after settlement checks are initially mailed to Settling Plaintiffs will revert to Epic.

G. **DOL.** Plaintiffs agree to cooperate with Epic and the DOL with respect to resolving claims by the class in the current matter for a period of no more than 60 days. Any amounts Epic is required to pay to the DOL as back wages regarding the pending appeal shall be a setoff to the total amount available to pay claims in this matter.

**4.** **Release.**

A. **Limited Wage & Hour Release.**

i. Settling Plaintiffs who submit a Valid Claim Form shall release the Released Parties of all wage and hour claims (state and federal) arising from the facts alleged or that could have been alleged as related to the facts pled in the complaint (as subsequently amended) during the class periods outlined above in Paragraph 2. The limited release specifically excludes any claims, including wage and hour claims, that Plaintiffs may have as a result of holding any other position with Epic other than a position as a laborer, foreman or mechanic.

ii. Class Members who do not submit a Valid Claim Form but who also do not opt out of the settlement, will not release FLSA claims but will release state law claims arising from the facts alleged or that could have been alleged as related to the facts plead in the complaint (as subsequently amended) during the class periods outlined above in Paragraph 2 and through June 22, 2021. Excluded from the release are any claims which cannot be waived by law, including the

right to file a charge with or participate in an investigation conducted by any state, or local government agency. The limited release specifically excludes any claims, including wage and hour claims, that Plaintiffs may have as a result of holding any other position with Epic other than a position as a laborer, foreman or mechanic. Plaintiff Albelo further releases Epic of any and claims that he raised or could have raised in the litigation which are personal to him and which he did not seek class certification for including, but not limited to, violations of the FLSA, the Kansas Wage Payment Act, Missouri Minimum Wage and Maximum Hours Law, and Kansas and Missouri state law for claims of breach of contract and unjust enrichment/quantum meruit.

5.    **Settlement Approval.**

A.    <u>Court Approval of Settlement.</u>  All terms and conditions of this Agreement, including without limitation, certification by the Court of the Settlement Classes, are contingent upon the occurrence of the Effective Date, defined herein.

(i)    *Preliminary Approval.* Within ten (10) business days of execution of this Agreement, Plaintiff will seek the Court's Preliminary Approval of the terms of this Agreement pursuant to Rule 23(e), by filing this Agreement with the Court and providing all information requested by the Court ("Preliminary Approval Motion").

(ii)    For purposes of this Agreement, "Preliminary Approval" shall occur upon the issuance of a Court order granting the Preliminary Approval of the Agreement preliminarily certifying the Settlement Classes for purposes of providing notice to the affected individuals, approving the form and content of the Notices and Claim Form (including a consent to join form and release), advising the Settlement Classes of the material terms of this Settlement, the procedure for approval thereof, and their rights with respect thereto, appointing Class Counsel as counsel to the Settlement Classes, and appointing a Claims Administrator. Once Preliminary

Approval has occurred, the settlement administrator shall send settlement notice to the Class Members in a format substantially in compliance with Exhibit A to all individuals who have already opted into the case and Exhibit B to all Rule 23 Class Members who have not already opted into the case. After the close of the notice period, the Court will then conduct a final approval hearing.

(iii)     *Final Approval.* In connection with seeking Preliminary Approval, the Parties will ask the Court to schedule and conduct a Final Approval hearing regarding final approval of the Settlement (the "Final Approval Hearing"), and to grant final approval of the Settlement ("Final Approval") no earlier than the time period required by 28 U.S.C. §1715, and at least one hundred and ten (110) days, or as soon thereafter as practicable, after the Preliminary Approval Date. The Parties will file an agreed Motion for Final Approval of the Settlement, and shall present a proposed Final Approval Order in connection therewith.

(iv)     <u>*Effective Date.*</u>  If the Court enters the Final Approval Order, the Effective Date shall occur on that date.

(v)     If the Court does not enter a Final Approval Order, or decides to do so only with material modifications to the terms of this Agreement, or if the Approval Order is reversed or vacated by a court of competent jurisdiction, then this Agreement shall become null and void, unless the Parties agree in writing to modify this Agreement and the Court approves this Agreement as modified.

(vi)     In the event that the Court does not certify the Settlement Classes for settlement purposes only or in the event that the Court does not grant Preliminary or Final Approval or if the Effective Date otherwise does not occur, Epic does not waive, and instead expressly reserves, its right to challenge the propriety of class certification in the Litigation or otherwise for

any purpose as if this Agreement had not been entered into by the Parties. The Parties expressly reserve all of their rights and defenses if the Effective Date does not occur. The provisions of this Agreement may be used by the Parties to enforce the terms of this Agreement. Neither this Agreement nor any term contained herein shall be used as evidence in any other legal proceeding or for any other purpose whatsoever.

B.        Dismissal of Action with Prejudice.   Subject to and conditioned upon the Court's Final Approval of the Settlement in accordance with the terms and conditions of this Agreement, Plaintiffs agree that Litigation shall be dismissed with prejudice, with all Parties responsible for their own costs and attorneys' fees, except as otherwise specifically provided in this Agreement.

6.        **Amendment of the *Albelo* Complaint**

A.        Within seven (7) days after the execution of this Agreement, Class Counsel shall file the Third Amended Complaint pursuant to Fed.R.Civ.P. 15(a)(2), which shall include all currently pled FLSA and state law claims asserted in the Litigation as well as state law claims for other foremen and drivers. The statutes of limitations for any newly pled class shall be June 5, 2012 – June 22, 2021. Epic will give the Court its written notice of its consent to the filing of the Third Amended Complaint.

B.        The Parties further agree and consent, in connection with seeking Preliminary Approval, that the Court postpone the deadline for Epic to file a responsive pleading to the Third Amended Complaint through the date of the Final Approval Hearing.  Upon entry of the Final Approval Order, Epic's response to the Third Amended Complaint shall be excused through the dismissal of the Litigation.  In such event, the Third Amended Complaint and the fact that the Parties stipulated to the filing of the Third Amended Complaint for settlement purposes only shall

have no effect or bearing on any future motion to amend or transfer any of the complaints in the pending Litigation as of the date this Agreement is executed by the Parties, and without prejudice to Epic's ability to oppose or to assert arguments opposing such motions.

7. **Settlement Administration and Payments.**

A.       The Settlement will be administered by a third-party administrator, to be selected by mutual consent of the Parties ("Claims Administrator"). The Parties agree not to unreasonably withhold consent to selection of a Claims Administrator. The Claims Administrator shall be responsible for providing a bid that contains a "not to exceed" estimate of costs. Reasonable fees and expenses of the Settlement Administrator shall be deducted from the Settlement Fund in the following manner: First from remaining monies from the Allocation Correction Set-Aside; and then from the Net Settlement Fund.

B.       The Settlement Administrator shall perform the services described in this Agreement, including, without limitation:

(i) Receiving from Epic and updating and maintaining as necessary a mailing list, mailing the Notices and Claims Forms, along with the follow-up mailings set forth herein to effectuate notice and to obtain as many returned Valid Claims Forms as practicable;

(ii) Receiving Valid Claims Forms and opt-out forms;

(iii) Calculating the Distribution Amounts for members of the Settlement Classes, including calculating applicable payroll taxes and withholdings, and depositing taxes and withholdings with appropriate taxing authorities;

(iv) Payment of any awards approved by the Court as to Attorneys' Fees and Lawsuit Costs and the Service Payments;

14

(v) Payment of the Distribution Amounts from the Net Distribution Amount to Settling Plaintiffs who submit Valid Claim Forms during the Claim Period;

(vi) Preparation of tax returns and tax reporting of payments;

(vii) Making determinations concerning disputes submitted by Settlement Class Members concerning their gross pay, in accordance with paragraph 7(C)(6); and,

(viii) Providing notices of the Settlement to governmental authorities as required by law.

(ix) Preparing and submitting to the Court a final accounting of the Settlement, twenty (20) days after the Claim Period expires in accordance with this Agreement; and

(x) Any other obligations established in this Agreement or subsequently agreed to by the Parties.

C.    Notice and Claims Process.

(i)              Within thirty (30) days of Preliminary Approval, Defendant will provide the Spreadsheet containing the class list to the settlement administrator and class counsel that lists, at minimum, names, last known addresses, state of employment, personal email addresses (if known), employee ID numbers, social security numbers, gross pay while in a covered position during the statutory period. To the extent any of the information described above or necessary to gross pay in a covered position are unavailable, the Parties will assign an average recovery amount to the Class Member based on available information for the rest of the Class. The parties shall provide the Settlement Administrator with all necessary cooperation, including but not limited to the execution of all documents necessary to administer the Settlement.

15

(ii)        Claim Process. Within thirty (30) days of receipt of the Spreadsheet and any other information identified in the previous subsection, the Claims Administrator shall mail and email (where available) to the Class Members a notice of the Settlement and consent and claim form in the form attached as Exhibits A and B. The Notice shall inform the Class Members of their eligibility to participate in the Settlement by submitting the consent and claim form, thereby becoming a Settling Plaintiff, as well as their anticipated settlement allocation. Settling Plaintiffs must submit their claim form within forty five (45) days of its mailing ("Claim Period"). A reminder notice will be mailed and emailed (where available) to individuals who have not yet submitted a Valid Claim Form thirty (30) days after the initial issuance of notice. The Settlement Administrator shall provide a secure claims process for on-line claims submission.

(iii)        Validity of Claim Form.  In order to be a Valid Claim Form, the Claim Form must be completed as instructed on the Claim Form with no other material alterations (excepting disputes pursuant to Paragraph 7(C)(6), signed, dated, and postmarked or otherwise returned to the Claims Administrator within the Claim Period.

a.    Within ten (10) days of receipt of an unsigned, incomplete or altered claim form, the Claims Administrator shall notify the Settlement Class Member who returned the form of its deficiency and provide such individual with a substitute form that the individual may use to cure the deficiency within the Claim Period.  The notice of deficiency and substitute form required hereunder shall be provided to the individual via U.S. mail or email (if available).  The substitute Claim Form must be returned and be a Valid Claim Form in the time provided in this subsection.  A Claim Form that remains unsigned, incomplete or altered after the close of the Claim Period is void.  The Parties agree to allow the Claims Administrator to resolve any challenges regarding the validity of any Claim Form made pursuant to this subsection,

16

consistent with the terms of this Agreement, and to make a final and binding determination on all issues presented by any such challenges.

        b.    Persons who do not return a Valid Claim Form to the Claims Administrator in compliance with the preceding paragraphs, and do not timely opt-out prior to the Final Approval Order, shall be deemed to release all claims for breach of contract and quantum meruit/unjust enrichment against Epic as described in Paragraph 4 and shall be deemed to have waived any right to receive a payment in conjunction with the Settlement.

        (iv)        Timeliness of Submissions

        a.    A required mailing sent by a Settlement Class Member shall be considered timely pursuant to this Agreement if the mailing is sent by U.S. Mail and postmarked before the applicable deadline.

        b.    If the prescribed time period in which to complete any required or permitted notices or mailings in accordance with this Agreement expires on a Saturday, Sunday or legal holiday (as defined by Fed. R. Civ. P 6(a)(4)), such time period shall be continued to the next following business day.

        (v)        **Notices Mandated by Statute**. The Settlement Administrator shall mail notices of the Settlement to an "Appropriate Federal Official" and "Appropriate State Officials" (collectively, "Government Officials") as required by 28 U.S.C. § 1715, no later than ten (10) days after Preliminary Approval. The Claims Administrator shall prepare the notices referenced in this paragraph, which shall include as exhibits the Preliminary Approval Motion (with its Exhibits), this Agreement, and the Third Amended Complaint.

        (vi)        Disputes.

a. The parties will meet and confer in good faith regarding disputes about class notice, and the validity of claims. If a Class Member attempts to opt in to the Settlement after the Consent Deadline, the parties will confer in good faith. In the interim, such class member's statute of limitations shall be tolled from the time the class member attempted to submit a claim until after the meet and confer process has occurred.

b. If a Settlement Class Member disputes gross pay listed for him/her in the Claim Form, he or she must present pay stubs evidencing the number of weeks worked as a laborer, foreman or driver. Counsel for the Parties shall promptly be notified by the Claims Administrator of any such dispute. The information as to the gross pay as pre-printed on the Claim Form shall be determinative of any disputed Distribution Amount, except that a Settlement Class Member may present to the Claims Administrator one or more Epic paycheck stub(s) demonstrating employment as a laborer, foreman or mechanic supporting a larger gross pay. In this event, gross pay for work performed as a laborer, foreman or mechanic as reflected on the Epic paycheck stub(s) will be determinative unless the Claims Administrator concludes that the Epic paycheck stub(s) is not authentic or was altered. The Parties agree that the Claims Administrator's decision will be final and binding. Settlement Class Members will be advised in the Notice that, to participate in the Settlement, they must agree to this dispute provision as well.

c. If any person contacts any of the Parties or the Claims Administrator during the Claim Period, asserting that he or she should have been sent a Notice and should be entitled to participate in the Settlement but that person is not included in the list sent by Epic to the Claims Administrator, that person shall be instructed by the Party or Claims Administrator to submit the dispute in writing to the Claims Administrator together with any documents or other evidence in support of his or her position. Counsel for the Parties shall be

18

promptly notified of any dispute. The Claims Administrator shall resolve the dispute by making a binding determination as to the issues presented by the claim, after consultation with the Parties' Counsel and review of any relevant documents. The Claims Administrator shall inform the potential member of the Settlement Classes of the outcome of the dispute. However, in making such a determination, the presumption will be that the records kept by Epic are accurate. Nothing in this section will preclude any person from submitting an objection to the Court.

               d.      If any Settlement Class Member contacts any of the Parties or Counsel for any of the Parties about the Settlement, he or she will be instructed to contact the Claims Administrator. It is the intent of the Parties that the Claims Administrator be the initial interface with Settlement Class Members about this Settlement and administration of the Settlement.

             (vii)     Procedures for Objecting to the Settlement.

               a.      Settlement Class Members seeking to object to the Settlement must timely file and serve such objection at least twenty-one (21) days prior to the Final Approval Hearing. The Notices mailed to Settlement Class Members shall contain the requirements and information set forth in this subsection.

               b.      To object, Settlement Class Members must file with the Court and serve on Counsel for the Parties listed at the end of this Agreement below, by first-class mail a written statement describing their reasons for objecting to the Settlement. No person shall be entitled to be heard at the Final Approval Hearing (whether individually or through separate counsel) or to object to the Settlement, and no written objections or briefs submitted by any person shall be received or considered by the Court at the Final Approval Hearing, unless such written statement of objections and supporting materials are timely filed and served as set forth herein.

19

c. Persons who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement. Persons who are not Settlement Class Members or who submit a timely request to opt out of the Settlement (if a member of the Rule 23 Class), may not object to the Settlement, and any objections filed by such persons will be null and void.

(viii) <u>Procedure for Opting Out of the Settlement</u>. Members of the Rule 23 Class who wish to opt out of the Settlement must submit to the Claims Administrator a request to opt out that includes their name, postmarked by first-class U.S. mail no later than twenty-one (21) days prior to the Final Approval Hearing. If, however, the Rule 23 Class Member submits a timely Valid Claim Form, his or her opt out request will be void. The Notices mailed by the Claims Administrator shall contain the requirements and information set forth in this subsection.

(ix) <u>Calculation of Distribution Amounts</u>.

a. Distribution Amounts for Class Members from the Net Distribution Amount shall be calculated as follows: Class member's pro-rata share of gross pay while working in a covered position during the applicable settlement period as a percentage of the total gross pay for all class members while working in a covered position during the applicable settlement period. That percentage shall then be applied to the Net Settlement Fund to determine a class member's individual pro-rata share of the Settlement amount.

D. <u>Payment of Attorneys' Fees and Service Payments.</u> Within ten (10) days after Final Approval, Defendant shall wire the total amount of the Court-approved Attorneys' Fees and Costs to the Settlement Administrator as agreed by the parties at that time.

E.      <u>Funding the Settlement and Distribution of Settlement Payments</u>.

(i)      After the Effective Date and upon the Court's ruling on the amounts to be awarded for (a) Attorneys' Fees and Lawsuit Costs and (b) Service Awards, the Net Settlement Amount shall be determined by subtracting Attorneys' Fees and Lawsuit Costs, Service Awards and Administration Costs from the Gross Settlement Amount.

(ii)      No later than ten (10) business days after the Effective Date, the Settlement Administrator will notify the Parties of the total Net Distribution Amount.

(iii)      No later than ten (10) business days after receiving notification of the total Net Distribution Amount from the Settlement Administrator, Epic will deposit the Net Distribution Amount with the Settlement Administrator.

     a.    Epic will not be required to pay more than the amount set forth in this Section.

(iv)      Within ten (10) days of funding, the Settlement Administrator shall issue the settlement checks to the class.

F.      <u>Undeliverable Settlement Materials.</u>  If materials sent to a Class Member are returned as undeliverable, the Settlement Administrator shall promptly undertake reasonable steps to determine the Class Member's current address and, if an additional address is located, to send the materials to the updated address.

G.      <u>Uncashed Checks / Unclaimed Monies.</u>  Checks shall remain negotiable for 6 months from the date of issuance.  The settlement administrator will mail a reminder postcard to any Settling Plaintiffs who do not cash their checks within 90 days of issuance. Class Members who do not cash their checks within 6 months of issuance will have their checks cancelled and

21

their check amounts held in trust or sent to a state unclaimed property division in the applicable state in which said Class Member was provided payment.

8. **Tax Treatment of Payments.** For individual settlement allocations as set forth in Paragraph 3 above shall be reported by the Settlement Administrator as wages to the appropriate taxing authorities on a Form W-2 issued to the Class Member with his or her taxpayer identification number, and shall be subject to deductions for applicable taxes and withholdings as required by federal, state, and local law. Service payments will be treated as non-wage income and reported by the Settlement Administrator to the appropriate taxing authorities on a Form 1099 issued to the Class Member (Box 3 – miscellaneous income).

9. **Court Retains Jurisdiction To Enforce Agreement.** The Court may retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement, to the extent permitted by law, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement. Any action to enforce this Agreement shall be commenced and maintained before this Court. This Agreement shall be governed by Missouri law, without regard to that state's choice of law provisions.

10. No Settlement Party Is the Drafter. No Party shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of construction that would or might cause any provision to be construed against the drafter hereof. This Agreement was drafted with the input by all Parties and their respective counsel, and no reliance was placed on any representations other than those contained herein.

11. **Cooperation Clause.** The parties agree to cooperate in good faith to effectuate the Settlement of the Litigation, including securing the Court's approval of the Agreement, assisting

with the administration of the Settlement in accordance with the terms of this Agreement, and obtaining a final judgment.

12. **No Admission of Liability and No Concession as to the Merits.** Epic denies that it violated the law in any manner and specifically denies that it violated any statutory or common law alleged in the Litigation, and asserts that it has strong defenses to the Litigation and the Wage and Hour Claims. Plaintiff makes no concessions as to the merits of his claims against Epic. The Parties have entered into this Agreement to avoid the risks, uncertainty, expense and burden of further litigation. Nothing contained herein, nor the consummation of this Settlement Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Epic, or concession thereof on the part of the Named Plaintiff.

13. **No Statements to the Media; Confidentiality.**

A. With respect to this settlement, Plaintiff and his counsel agree not to publicize or contact the media, or disclose any information, about the negotiations process. With respect to the terms of this settlement, Plaintiff's counsel agrees not to initiate contact with the media about the terms or the negotiations. The Parties will keep the terms of this settlement confidential, to the extent permitted by law.

B. The Parties will prepare a positive joint statement regarding the Litigation and settlement of the Litigation. All communications by Class Counsel, the Settlement Class Representatives, Named Plaintiff, and Epic and its counsel regarding the Litigation and settlement of the Litigation shall be consistent with this joint statement.

C. Nothing in this Agreement shall prevent Epic from filing any required regulatory disclosures regarding the Litigation or complying with its obligations as a public company.

14. **Material terms.** These terms shall be deemed the material terms to the final Settlement Agreement and Release to be executed by the Parties. These material terms are conditional upon, interdependent with, and inextricably intertwined with each other. In other words, each and every term of this Agreement is a material term, and all such terms are interrelated with, dependent upon, and non-severable from one another, including but not limited to all terms of monetary relief and non-monetary relief.

15. **Return or Destruction of Documents.** Any documents and information produced by Epic as part of settlement discussions until execution of this Agreement, including all copies, excerpts, and electronic versions thereof, shall be destroyed by Class Counsel or returned to Epic's Counsel within ten (10) days of the Effective Date.

16. Complete Agreement. Other than as stated herein, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility therefore. This Agreement contains the entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties and constitutes the entire understanding and agreement between the Parties and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection therewith. This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties.

17. Notifications and Communications. Any notifications and communications made pursuant to, required by or otherwise in connection with the terms of this Agreement shall be sent to the Parties at the addresses of their respective counsel.

**18.** Calculation of Time Periods. All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Settlement Agreement or by order of the Court, the day of act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, or, when the act to be done is the filing of a partner in Court, a day on which weather or other conditions have made the office of the Clerk of the Court inaccessible, in which event the period shall run until the end of the next day that is not one of the observance of New Year's, the birthday of Dr. Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day and any other day appointed as a federal or a Missouri state holiday on which the Court is closed.

**19. Agreement Form and Construction.**

A. The Parties agree that the terms and conditions of this Agreement are the result of lengthy, carefully considered, arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Agreement.

B. This Agreement may not be changed, altered, or modified, except in writing and signed by counsel for the Parties, and, if material, approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by counsel for the Parties.

C. To the extent necessary to effectuate the terms of this Agreement, including without limitation the meaning of any defined terms, the singular shall be construed as the plural

and the plural construed as the singular, except where a plain reading of the language indicates that the use of the singular or plural is intended.

D. The Notices will advise all Settlement Class Members of the binding nature of the Agreement. Submission of a Valid Claim Form or cashing of the Distribution Amount check shall constitute acceptance of this Agreement and have the same force and effect as if each Participating Settlement Class Member signed this Agreement.

E. This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Agreement, for a complete resolution of the released claims.

F. In the event of an inconsistency between the (1) Notices and/or Claim Form; and (2) the Settlement Agreement, this Agreement shall govern.

G. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission or other electronic means will constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties transmitted by facsimile or other electronic means will be deemed to be their original signatures for any purpose whatsoever.

**20. <u>Authority.</u>** Undersigned counsel certify that they are authorized to agree to these terms on behalf of their respective clients.

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Settlement Agreement as follows:

26

**PLAINTIFF:** _____     **Date:** _____
Radames Molina Albelo


**CLASS**
**COUNSEL**
**APPROVED AS TO FORM:**


_____     **Date:** _____
Michael Hodgson
The Hodgson Law Firm, LLC
3609 SW Pryor Rd
Lees Summit, MO 64082


_____     **Date** _____
Timothy R. West
Bertram & Graf, L.L.C.
2345 Grand Boulevard, Suite 1925
Kansas City, Missouri 64108


_____     **Date:** _____
Paul ("Pablo") H. Mose
Rebein Brothers, P.A.
810 Frontview
Dodge City, Kansas 67801

27

**DEFENDANT:** _____     **Date:** _____

**Epic Landscape Productions, LC**


**DEFENDANTS'**
**COUNSEL:**

**APPROVED AS TO FORM:**


_____     **Date:** _____

Eric W. Barth
Hinkle Law Firm LLC
1617 N. Waterfront Pkwy., Suite 400
Wichita, Kansas 67206

## SETTLEMENT AGREEMENT, RELEASE & WAIVER

This Settlement Agreement, Release and Waiver ("Agreement") is made this __ day of July, 2021 by and between Radames Albelo ("Plaintiffs"), on their own behalf and on behalf of those represented by the collective action, and their respective agents, representatives, assignees, heirs, executors, and beneficiaries of Epic Landscape Productions, L.C., its parents, divisions, subsidiaries, predecessors, successors and affiliates, and its and their directors, officers, members, fiduciaries, insurers, employees, attorneys and agents (referred to as "Epic") (Epic and Plaintiffs are collectively referred to herein as the "Parties"). By this Agreement, the Parties intend to fully, finally, and forever resolve, discharge, and settle the "Released Claims" (as defined below) in favor of Epic, upon and subject to the terms and conditions contained herein.

### WITNESSETH:

**WHEREAS**, the Parties agree upon the following predicate procedural history and facts:

**A.** On June 5, 2017, Albelo commenced litigation in the U.S. District Court for the Western District of Missouri (the "Court") captioned *Albelo, et. al. v. Epic Landscape Productions, L.C.* (the "Collective Action"). In the Collective Action, Plaintiff asserts claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA), arising out of Epic's alleged failure to properly pay wages, including overtime compensation and violations of Missouri and Kansas law.

**B.** Plaintiffs, through their counsel, Michael Hodgson of The Hodgson Law Firm, L.L.C., Timothy West of Bertram & Graf, LLC, and Pablo Mose of Reiben Brothers, LLP brought the claims asserted in the Collective Action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and other current and former landscape laborers who worked for Epic.

**C.** 103 persons filed consents to join the Collective Action as additional plaintiffs.

**D.** On June 28, 2021, the Court denied Plaintiffs' Motion for Partial Summary Judgment as to breach of contract/unjust enrichment claims, leaving claims arising under the FLSA, Missouri's overtime law and the Kansas Wage Payment Act and did not rule upon the scope of damages and/or the availability of liquidated damages. Epic denies that it has committed any wrongdoing or violated any state or federal law pertaining to the payment of wages and has defended the claims asserted in the Collective Action.

**E.** Subsequent to the parties' negotiations on June 22, 2021, the parties continued engage in meaningful, arms-length negotiations and were able to reach a revised settlement. This Agreement memorializes the settlement reached between the Parties.

**F.** The named Plaintiff, and Collective Action Counsel believe, in view of the costs, risks, and delays of continued litigation and appeals balanced against the benefits of settlement to the Collective Action Members (as defined below), that the settlement as provided in this Agreement is in the best interest of the Collective Action Members and is a fair, reasonable, and adequate resolution of the Collective Action.

**G.** Pursuant to this Agreement, the Parties desire and intend to settle and resolve the "Released Claims" (as defined in ¶ 10 below) as to Epic on a collective action basis.

**H.** To ensure that the settlement is in the best interests of the Plaintiff and the Collective Action Members, the Parties engaged in extensive discovery including analysis of work schedules, pay records and interviews with the Collective Action Members.

**I.** The Collective Action Members shall receive written notice of the settlement (the "Notice") and payment for their back wages via the settlement fund established herein.

**J.** The Parties desire and intend to seek Court approval of the settlement of the Collective Action as set forth in this Agreement (the "Approval Order") and to seek an entry of Final Dismissal from the Court dismissing with prejudice the claims of all Opt-In Members as set forth herein. The date on which the Approval Order is entered is defined as the "Approval Date."

**K.** The Parties and their respective counsel agree to undertake all steps necessary to effectuate the terms and purposes of this Agreement, to secure the Court's approval of same, and to oppose any objections to the proposed settlement.

**NOW, THEREFORE**, in consideration of the foregoing premises and the mutual promises hereinafter set forth, the Parties agree as follows:

1. **No Admission of Liability.** Epic expressly denies any wrongdoing or any violation of state or federal law as alleged in the Collective Action. In fact, Epic represents that it relied upon good faith advice and judgment that everything it did was in accordance with the law. Nothing contained in this Agreement shall be construed as an admission of any liability by any Party, and all Parties agree not to offer this Agreement as evidence or otherwise use it in any judicial or administrative proceeding, except that this Agreement may be introduced in any proceeding for the sole purpose of enforcing its terms.

2. **Approval of Settlement.**

a) All terms of this Agreement are contingent upon the approval of the Court.

b) The Parties and their counsel will, contemporaneously with their execution of this Agreement, file an unopposed motion for approval of settlement, seeking final approval of their proposed settlement, as evidenced by the Approval Order.

c) The Parties agree that if the Court does not approve any material term in the Agreement or the unopposed motion, or requires as a condition to granting the unopposed motion any term that effects a material change in this Agreement, then this Agreement may be voided at any Party's option. The Parties agree that any ruling that the Court issues regarding Collective Action Counsel's attorney's fees shall not constitute a material change in this Agreement, unless such award has the effect of increasing the total amount Epic must pay in complete settlement of all claims addressed by this Agreement.

3. **Settlement Collective Action (Opt-In Members).** The Collective Action Members shall include all current and former landscape laborers, foremen and mechanics who were employed by Epic and Consented to Join this litigation.

4. **Settlement Payment**

a) Epic agrees to pay a total sum of Five Hundred Eighty-five Thousand Nine Hundred Forty Nine Dollars and Sixty-two Cents ($585,949.62) (the "Total Settlement Amount") in order to fully and finally resolve the wage and overtime pay claims in their entirety for all Collective Action Members; interest; litigation costs; and plaintiffs' service awards, if any. The Settlement Fund amount was determined by taking the actual overtime wages that should have been paid to each Opt-in Plaintiff and multiplying those wages by 95% and then adding $4,000 for a service award to the named Plaintiff. Epic will be responsible for standard state and federal taxes imposed on it by law as an employer as a result of payments made to Collective Action Members under this Agreement, but Epic shall not be responsible for any other taxes imposed by law on any Collective Action Members or any other sums in excess of the Total Settlement Amount.

b) Defendant's counsel shall administer the settlement.

c) All uncashed payments shall be distributed to the Missouri Unclaimed Property Fund.

5. **Attorneys' Fees and Costs.**

a) Collective Action Counsel shall apply separately for recovery of fees and costs. Epic shall maintain the right to object to and oppose any application of fees and costs.

6. **Service Payments to the Named Plaintiff.** Subject to Court approval, the named

Plaintiff Albelo shall receive $4,000.00 in recognition of his service to the collective class, and in recognition for the hours and labor expended by Albelo during the four years of litigation.

7.  **Administration of Claims.**

    a) Defendant's counsel shall administer the settlement.

8.  **Notice and Payment to Collective Action Members.**

    a) Epic shall, as expeditiously as possible but not to exceed 14 days from entry of the Approval Order, issue Notice and Payments to the Collective Action Members. The Notice shall be in substantially the form attached as Exhibit 1. The notice will be written in both English and Spanish.

    b) Before sending the Notices or Claims Forms required by this paragraph, Defendant shall confirm and, if necessary, update the addresses for the Collective Action Members through communications with Plaintiffs' counsel, and if necessary, through third party address verification companies. This address updating process will produce the last known address for the Collective Action Members. After completing the address updating process, Defendant shall send via first class U.S. mail a Notice of the settlement and a check to each Collective Action Member at his or her last known valid address. If any Notice and Claim Form mailer is returned with a new address, the Notice and Claims Form will be re-mailed by the Defendant to the new address.

9.  **Calculation of Each Opt-In Member's Individual Claim Amount.** Each Collective Class Member shall receive a settlement payment. Each Opt-In Member's settlement payment will be determined based upon a pro-rata share of the Settlement Fund, depending upon the Opt-In Members' total wages during his or her employment with Epic during the period between June 5, 2014 and July 8, 2021 (the "Settlement Period"). Half of each award shall be treated as back wages, and the other half shall be treated as liquidated damages, under IRS form 1099. All back wages will be subject to all applicable payroll taxes and deductions. All liquidated damages shall be subject to treatment as "other income" pursuant to IRS form 1099.

10. **Releases.** Upon the entry by the Court of a Final Dismissal, all Opt-In Members shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge Epic from any and all suits, actions, causes of action, claims, or demands against it based on putative violations of federal and state law pertaining to hours of work or payment of wages, including without limitation all claims that were asserted or could have been asserted in the Collective Action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, based on events that occurred or are alleged to have occurred from the beginning of time until the date of the Court order

resulting in Final Approval. Plaintiff Albelo further releases Epic of any and claims that he raised or could have raised in the litigation which are personal to him and which he did not seek class certification for including, but not limited to, violations of the FLSA, the Kansas Wage Payment Act, Missouri Minimum Wage and Maximum Hours Law, and Kansas and Missouri state law for claims of breach of contract and unjust enrichment/quantum meruit. (the "Released Claims").

11. **No Statements to the Media.**

    a) With respect to this settlement, Plaintiff and his counsel agree not to publicize or contact the media, or disclose any information, about the negotiations process. With respect to the terms of this settlement, Plaintiff's counsel agrees not to initiate contact with the media about the terms or negotiations.

    b) The Parties will prepare a positive joint statement regarding the Litigation and settlement of the Litigation. All communications by Class Counsel, the Settlement Class Representatives, Named Plaintiff, and Epic and its counsel regarding the Litigation and settlement of the Litigation shall be consistent with this joint statement.

12. **Dismissal of Actions.** Upon approval of the settlement terms and upon Order of the Court, the Parties agree that this Collective Action shall be dismissed in its entirety, on the merits, as against Defendant, with prejudice, and without costs to any party, except to the extent otherwise expressly provided in the Agreement. The dismissal of the Collective Action shall be with prejudice and without costs, waiving all rights of appeal, with the Court retaining jurisdiction over the case for purpose of ensuring compliance with the terms of this Agreement.

13. **Complete Agreement.** Other than as stated herein, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility therefore. This Agreement contains and constitutes the entire understanding and agreement between the Parties and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection therewith. This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties.

14. **Knowing and Voluntary Agreement.** Plaintiffs and Collective Action Counsel each agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. Plaintiffs further affirm that they have not been coerced, threatened, or intimidated into signing this Agreement and that they have been advised by counsel.

15. **Notices.** Any notices, inquiries, or other issues issued pursuant to the terms of this Agreement shall be sent to the Collective Action Counsel at the addresses of their

respective counsel as follows:

| | |
|---|---|
| Michael Hodgson<br>The Hodgson Law Firm, LLC<br>3609 SW Pryor Rd<br>Lee's Summit, MO 64082<br>*mike@thehodgsonlawfirm.com*<br><br>*Collective Action Counsel* | Pablo Mose<br>Reiben Brothers P.A.<br>810 Frontview<br>Dodge City, KS 67801<br><br>Timothy West<br>Bertram & Graf, LLC<br>2345 Grand Blvd., Suite 1925<br>Kansas City, MO 64108 |

16. **Severability.** If any part of this Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other provisions of this Agreement, which shall be construed, reformed and enforced to affect the purposes thereof to the fullest extent permitted by law. If one or more of the provisions contained in the Agreement shall for any reason be held to be excessively broad in scope, subject matter or otherwise, so as to be unenforceable at law, the Parties agree that such provision(s) shall be construed to be limited or reduced so as to be enforceable to the maximum extent under the applicable law.

17. **Joint Preparation.** This Agreement and all attached exhibits shall be deemed to have been drafted jointly by the Parties and, in construing and interpreting this Agreement, no provision of this Agreement shall be construed or interpreted against any party because such provision, or this Agreement as a whole, was purportedly prepared or requested by such party.

18. **Counterparts.** This Agreement may be signed in counterparts and the separate signature pages executed by the Parties and their counsel may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument.

19. **Governing Law.** This Agreement shall be interpreted in accordance with Missouri law.

IN WITNESS WHEREOF, the Parties and their duly authorized attorneys have caused this Agreement to be executed this ___ day of July, 2021.

PLAINTIFF: _____          12/07/2021

**Radames Molina Albelo**                    Date: _____

CLASS
COUNSEL
APPROVED AS TO FORM:

_____                      Date: _____
Michael Hodgson
The Hodgson Law Firm, LLC
3609 SW Pryor Rd
Lees Summit, MO 64082


_____                      Date _____
Timothy R. West
Bertram & Graf, L.L.C.
2345 Grand Boulevard, Suite 1925
Kansas City, Missouri 64108


_____                      Date: _____
Paul ("Pablo") H. Mose
Rebein Brothers, P.A.
810 Frontview
Dodge City, Kansas 67801

**DEFENDANT:**

Epic Landscape Productions, LC

Date: 7/12/2021

**DEFENDANTS'**
**COUNSEL:**

**APPROVED AS TO FORM:**

Date: _____

Eric W. Barth
Hinkle Law Firm LLC
1617 N. Waterfront Pkwy., Suite 400
Wichita, Kansas 67206

**PLAINTIFF:** _____

Radames Molina Albelo     Date: _____

**CLASS**
**COUNSEL**
**APPROVED AS TO FORM:**

Michael Hodgson     Date: 7/12/21
The Hodgson Law Firm, LLC
3609 SW Pryor Rd
Lees Summit, MO 64082

Timothy R. West     Date 7/12/21
Bertram & Graf, L.L.C.
2345 Grand Boulevard, Suite 1925
Kansas City, Missouri 64108

Paul ("Pablo") H. Mose     Date: 7/12/21
Rebein Brothers, P.A.
810 Frontview
Dodge City, Kansas 67801

DEFENDANT: _____ Date: 7/12/2021

Epic Landscape Productions, LC

DEFENDANTS'
COUNSEL:

APPROVED AS TO FORM: _____ Date: 7/12/21

Eric W. Barth
Hinkle Law Firm LLC
1617 N. Waterfront Pkwy., Suite 400
Wichita, Kansas 67206